GOLTZ, *Appellant*, v. GRISWOLD.

Division One, December 22, 1892.

1. **Hearsay Evidence:** REVERSIBLE ERROR. The admission of prejudicial hearsay evidence is reversible error.

2. **Negligence:** PUBLIC ALLEY: UNGUARDED OPENING: INSTRUCTION. The plaintiff was injured by falling at night into an opening in a public alley along defendant's hotel. The court having instructed that if plaintiff was injured by the failure of defendant to provide a proper guard railing their verdict should be for plaintiff, added the qualification, "unless a suitable railing or guard had been placed around the opening and it had been removed without the knowledge or consent of defendant, and by the exercise of ordinary care defendant would not have known of such removal." *Held*, that the qualification should not have been added to the instruction, as there was no evidence to authorize it.

3. ———: ———: ———: ———: CONTRIBUTORY NEGLIGENCE. The evidence showed that the opening into which plaintiff fell was on the north side of an alley, next to defendant's hotel, and three or four feet in width; that while plaintiff was crossing the alley on a dark night his hat was blown off by the wind into the alley; that he followed it in a fast walk touching the wall of the hotel with one hand and trying to reach his hat with the other, and while so doing fell into the opening. *Held*, there was nothing in these facts to warrant suggestions in the instructions given the jury that the plaintiff might have been thrown into the opening by some unknown force, or that he heedlessly rushed into it.

*Appeal from St. Louis City Circuit Court.*—HON. J. E. WITHROW, Judge.

REVERSED AND REMANDED.

*F. & Ed. L. Gottschalk* for appellant.

(1) The court erred in the admission of the evidence of Wray, the police sergeant; it was hearsay and prejudicial. (2) The court also erred in the qualification it made to the first instruction asked by plaintiff; no such issue was made in the pleadings and there was no testimony on which to base it. (3) Contributory negligence is a question for the jury. *Kenney v. Railroad,* 105 Mo. 286; *Wilkins v. Railroad,* 101 Mo. 93; *Buesching v. Gaslight Co.,* 73 Mo. 219. The instructions given by the court are further objectionable on the ground that they make it negligence in a man to go into a public thoroughfare, knowing of no danger therein, but assuming, as he might do, that the public thoroughfares are not dangerous. What would the same trial court say about a man running or rushing into a dark alley, knowing it to be dangerous, or of one that saw or could have seen the danger and yet failed to exercise care and fell into it?

*Martin, Laughlin & Kern* for respondent.

BRACE, J.—This is an action for damages for personal injuries, in which the jury found for the defendant, and from the judgment in his favor on such verdict the plaintiff appeals.

The substance of the petition is: That the defendant is the owner and proprietor of the Laclede hotel, on the corner of Sixth and Chestnut streets, in the city of St. Louis; that said building is bounded on the

south by a public alley: "that in said alley immediately adjoining the property of the defendant there is an opening designed to furnish light to the basement part of said hotel; which opening is about forty feet long, three to four feet wide and about twelve feet deep, provided at the top with an iron railing on three sides, the fourth side being formed by the wall of the building; that at the time herein mentioned the railing at the west side of said opening was and had been for a long while broken off, decayed or destroyed, so that said opening on the west side was unprotected and unguarded by a sufficient railing or otherwise; that in the night, between the fifth and sixth days of February, 1889, the plaintiff, while lawfully passing and walking in said alley, without knowing of, or seeing said excavation or opening, nor able to see the same by reasons of the neglect of the defendant to keep a light there or other warning, fell into said opening and received serious injury."

The answer was a general denial, and a plea of contributory negligence, upon which issue was joined by reply.

The errors insisted on here are, that the court admitted improper evidence, refused an instruction asked by the plaintiff, and gave the following instructions on its own motion and at the request of the defendant, which are claimed to be erroneous:

"1. If the jury believe from the evidence, that the defendant was the owner and in possession of the building and premises known as the Laclede Hotel, in the city of St. Louis, Missouri, on the morning of the fifth day of February, 1889, and that on the south side of said hotel there was at said time a public alley; that in said alley or immediately adjoining the same, an opening about ten or twelve feet in depth, about three feet in width, and about twenty feet in length, joins said hotel

and is a part thereof, then the law devolves upon the defendant the duty so to guard and protect said opening as to render it secure for persons lawfully using said alley; and if the jury further find from the evidence that plaintiff, on or about the fifth day of February, 1889, while lawfully being in or passing through said alley, and without negligence on his part fell into said opening on the west end or west side thereof, by reason of the neglect of the defendant to provide a proper railing, or to sufficiently guard and protect said opening, and that he (Goltz) was injured thereby, then the jury will find for the plaintiff; unless you further find from the evidence that a suitable railing or guard had been placed around said opening and that said guard or railing had been removed without the knowledge or consent of defendant, and that by the exercise of ordinary care the defendant would not have known of such removal.

"2. If you believe from the evidence that the injuries complained of were occasioned by the carelessness or negligence of the plaintiff, which directly contributed to the accident, your verdict ought to·be for the defendant, whether the place into which the plaintiff fell was securely guarded or not.

"3. If the plaintiff was thrown into the area or fell in through his own carelessness or negligence, he cannot recover in this case, and your verdict should be for the defendant.

"4. The pursuit of his hat was not such an emergency as exempted the plaintiff from the exercise of reasonable care and prudence when he entered the alley in question, and if you find from the evidence that plaintiff, without exercising ordinary care and prudence, rushed or ran into the alley, knowing it to be dark, and not knowing the dangers involved, and whilst so rushing or running he fell into the area in

question, he cannot recover in this case, and your verdict should be for the defendant.

"5. If you find from the evidence that the plaintiff in the night time ran or went with great haste in the alley in question, and at the time the alley was dark and he was unable to see his way, and he did not know of the dangers or risk involved, and if he was a stranger in the place and could not discover or discern the condition of the alley, and while running through the alley and without exercising ordinary care and prudence, and while running through the alley, fell into the opening referred to by the witness, then he was guilty of such contributory negligence as precludes his right to recover in this case, and the jury will so find."

On the trial Henry Voidt testified for the plaintiff in substance as follows: "I am a tailor, am an adopted son of the plaintiff, have had a home with him for the last nine or ten years. Last February, at the time of the accident befalling the plaintiff, I went to look at the place of the accident. This was in the afternoon of the same morning he was found in the opening. I went into the alley from Market street, between Fifth and Sixth streets. The alley makes an angle. It comes in at Market street and comes out on Sixth street; when I got there I found a man fixing the railing, he was a blacksmith, I think; the railing is a little longer than this (referring to the jury railing), about as high as this, and at one end it runs into the house; the man was fixing the corner post, and putting an iron bar into the bottom, and he was fastening it to the post. The railing is of iron, posts and cross pieces; on the edge where it was being repaired there were no cross pieces; the man was fixing the west end, from the iron post to the wall of the hotel, a space of about three or four feet, I think."

Here the court ruled out several questions as follows:

"*Q.* Describe that part of the railing at the western end of area (defendant's counsel objects to the question).

"The Court: This was after the accident?

"Mr. Laughlin: Yes, sir.

"The Court: The objection is sustained. (Plaintiff's counsel excepts to the ruling of the court.)"

"There was one cross bar at the bottom; at the time I saw it, the man was working at the top bar, there was nothing between that bar and the cross bar at the bottom; the space between them was large enough for anybody to slip or fall through; I speak of the west side of the railing; the south side of the railing had cross bars between the posts; it is about three and one half to four feet high."

On cross-examination, he testified: "I am plaintiff's adopted son, lived with him, was hunting for him the next morning, went to the police station on Chestnut street, and asked them whether they had found this man; saw the sergeant in charge.

"*Q.* Did you tell the sergeant there, that your stepfather had gone on a spree with some people from the old country the night before and had not returned? *A.* I did not tell him. Here plaintiff's counsel objects to the question as immaterial and incompetent.

"*Q.* Was it a fact that your stepfather did go off on a spree with some friends from the old country the night before? *A.* No, sir.

"*Q.* Did you tell the sergeant that he had. *A.* No, sir."

Plaintiff's counsel objected to the question.

"The Court: Before you objected, he answered the question.

"Mr. Gottschalk: I ask that the answer be stricken from the record. On inquiry by the court, defendant's counsel states, the witness has made certain statements and he wants to find out whether he has made different statements; whereupon the court overrules the objection, to which ruling plaintiff, at the time, duly excepts."

For the defendant John H. Wray was introduced as a witness and testified as follows: "I am sergeant of police; remember the occurrence of this man's fall; he was brought to our station. Next day this gentleman (referring to Mr. Voidt) came to the station and inquired for him.

"Q. Go on and tell what was said."

Plaintiff's counsel objects to the question as calling for a conversation in the absence of the plaintiff. Objection overruled. Plaintiff excepts.

"He came and was making inquiry about this man (plaintiff) and he represented that this man was his guardian or father or something; he was a particular friend at any rate and lived with him or something of that kind, as well as I remember, and he said he was out the night previous, I think it was, to a meeting of some tailors, to a lodge, I think is what he said to me, and after the meeting he and some friends had gone off together to a saloon and had a good time, and had got under the influence of liquor, and they bade him good-bye about Sixth and Market streets, that they insisted on taking him home and he said he was able to take care of himself and would not let them do it, and they then bade him good-bye, and that was the last they saw of him and they didn't know what became of him. * * * He said this was what the friend who was with the plaintiff told him."

I. It is insisted that the court committed error in admitting the evidence of the witness Wray, and with

much reason.   It was certainly not admissible as original evidence, nor do we think it was admissible in impeachment of the evidence of Voidt.   Previous declarations of a witness in regard to a material matter about which *he testifies*, inconsistent with his testimony upon that matter when on the stand, may be given in evidence for the purpose of impeaching the veracity of the witness.   But in this case the witness Voidt did not testify at all in regard to the proceedings or the condition of the plaintiff on the evening of the accident. He could not have done so, because he was not with him, knew nothing about that matter, and did not undertake to speak in his evidence on that subject at all.

In the face of this situation the counsel for the defendant adroitly put the question to this young and inexperienced witness, "Was it a fact that your stepfather did go off on a spree with some friends from the old country the night before?"   To which he promptly answers, "No, sir."   Such answer being of course nothing more than his then opinion upon that subject from what he had heard from others, and about which he personally knew and testified nothing.   And when counsel quickly follows with the question:   "Did you tell the sergeant that he had?"   It is not surprising that he immediately answered, "No, sir," perhaps indignant that any one should think for a moment that he entertained such an opinion, or had expressed it to another.   And so it turns out when the officer is examined.   He did not express to him such an opinion, or undertake to tell him anything about the matter, save what he had heard from others.   There was here no evidence to be impeached, and none impeaching it. But this semblance of impeachment was made the means of getting before the jury as some sort of evidence the vague rumors that may have come to the

ears of the boy and the police on the morning after the accident; and which it turned out upon the trial of this case was unsupported by the evidence of sworn witnesses. That it was prejudicial to the plaintiff's case there can be little doubt in view of the result.

II. Instruction number 1, given by the court, contains the substance of plaintiff's refused instruction qualified by the last clause, to-wit: ''Unless you further find from the evidence that a suitable railing or guard had been placed around said opening and that said guard or railing had been removed without the knowledge or consent of defendant, and that by the exercise of ordinary care the defendant would have known of such removal,'' and of this qualification the plaintiff complains principally for the reason that there is no evidence upon which to base it.

The evidence for the plaintiff tended to show that when the plaintiff was found early in the morning in an unconscious condition lying at the bottom of .this open cellar, that whatever railing there had been at the western end, which was between three and four feet wide, was broken down and the west end left open or partially so. The situation spoke, for itself, and his evidence made a *prima facie* case of the insufficiency of that railing to protect the lives and limbs of passers in the alley from the danger of falling in the subway. *Kearney v. Railroad*, 5 L. R. Q. B. 411; *Khron v. Brock*, 144 Mass. 516; *Mullen v. St. John*, 57 N. Y. 567; *Franke v. City of St. Louis*, 110 Mo. 516.

To meet this *prima facie* case the defendant introduced evidence to show that originally there had been constructed around this opening a sufficient iron railing; that, while the western end had at one time been removed by the defendant's servants to enable them to get some boilers down into this subway, the lower bar near the ground connecting the corner post with the

building was left in position; and while the upper bar and the connecting iron work (between the two bars) had not been restored, there had been substituted for them a piece of gas pipe in the place of the upper bar, connected with the lower bar by interlaced telegraph wire across the space between the two bars; that, while this substitute railing was afterwards found by the police to be loose and insufficient and reported to the defendant, it had been repaired, and was in good condition on the night of the accident. And this was the substance of all the evidence on the condition of the western end of the railway. There was no evidence whatever upon which to base the idea in the instruction of a removal of this west end railing, such as it was, by a third person without the defendant's consent, and the plaintiff's instruction should not have thus been qualified.

III. The remaining instructions complained of are all on the subject of contributory negligence. It is not necessary that they should be analyzed or examined in detail. That they should not have been given will become manifest by a consideration of the few plain, simple facts disclosed by the evidence. This open cellar-way, on the south side of the Laclede Hotel, runs lengthwise with the north side of the alley and is between three and four feet wide. Between its west end and Sixth street a big smokestack is located beside the building, whose diameter is about two and one half or three feet, thus extending nearly or quite as far toward the line of the alley as the cellar-way. It seems that, while the light from Sixth street shines into the alley, this smokestack casts the west end of the opening into the shade. The plaintiff, who the evidence shows was an industrious tailor of sober habits and a stranger to this part of the city, was passing along Sixth street on the night of the accident, which was cold, dark and windy.

He had on a stiff, new hat; as he was crossing the alley his hat blew off and into the alley, and in his own language this is what he did: "I went right after my hat. I did not run fast; made good steps, a fast walk. I could see where I was walking until I got to the smokestack; my hat was close to me. Behind the smokestack my hat rolled towards the hotel, and I followed it, had my left hand touching the wall, and was trying to grab my hat with my right hand. I went about six or seven feet that way, when I pitched right into the opening."

The plaintiff further testifies that, during the evening before his hat blew off, he had taken a glass of beer and three small glasses of some kind of bitters, which he says was a mild drink, and that he was not at all under the influence of liquor. In this he is corroborated by a witness who was with him during the evening, and who parted with him but a few moments before the accident. When he was found the next morning at the bottom of the subway in a helpless condition, he asked for a drink of coffee, but, upon the suggestion of the steward of the hotel, whiskey was given him instead. He was directly taken thence to the dispensary, where a physician in charge upon a superficial examination, based upon his appearance and the smell of alcohol on his breath, diagnosed the case as contusion of the scalp, chest and alcoholism, and sent him to the hospital where he was examined and treated by two physicians, one of whom had been his family physician for eight years, and no indication or sympton of alcoholism was found in his system.

We look in vain through these evidential facts for either idea suggested to the jury in the instructions that the plaintiff may have been thrown into this opening by some unknown force or that he

heedlessly rushed into it. In fact, we look in vain through the whole record for any evidence of negligence on the part of the plaintiff contributing to his injury, or for any act of his that would not have been that of an ordinarily prudent man under the circumstances. Had there been such evidence, these instructions are objectionable in other respects, which however it is unnecessary to notice.

For the errors noted, the judgment will be reversed and the cause remanded for new trial. All concur except BARCLAY, J., who does not concur in paragraph 3.