# HEBERLING v. CITY OF WARRENSBURG, Appellant.

## Division Two, June 11, 1907.

1. **NEGLIGENCE: Knowledge of Defect.** It is error to instruct the jury .that if plaintiff knew of the defect in the street and by the exercise of ordinary care could have avoided injury and did not exercise that care, he cannot recover. If he had knowledge of the defective condition, and also knew that it was dangerous, and failed to exercise ordinary care to avoid injury, he cannot recover. But mere knowledge of the defect alone is not sufficient; there must also be knowledge that the defective condition was dangerous.

2. ——: ——: **Duty to Discover.** It is not the duty of a person traveling on a public street to examine the street for defects, but he may act upon the presumption that it is reasonably safe so long as he conducts himself as a reasonably prudent person would do under like circumstances.

3. ——: ——: **Avoiding Danger.** If the traveler knows of the defect in the street, and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use it provided he exercises that care that a reasonably prudent person would exercise under like circumstances; but he is not bound, merely because he encounters a defect a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely.

4. ——: ——: **Culvert: Obvious Danger.** The street commissioner had removed a culvert which extended entirely across the street, leaving a ditch, with hard perpendicular sides, from a foot and a half to two feet wide and fourteen inches deep, and filled it with loose earth, which was soft, and wagons passing over it sank to the hub, and the day before plaintiff passed over it, it had rained and sleeted, and the place at the time was covered with water, and was not distinguishable from the surrounding street to one who did not know of the culvert's removal. Plaintiff and his driver testifed that they did not know of the culvert's removal or of the defective condition, and as they drove their buggy over it in a trot, the wheels struck the hard perpendicular sides, plaintiff was thrown forward, the team ran, and the driver in order to stop them ran them into a telegraph pole, and plaintiff was injured. *Held,* that the mere fact that there was mud and water in the street cannot be held, as a matter of law, to have apprised them of

the danger in crossing the place; nor, according to their evidence, was the place so glaringly and obviously dangerous that plaintiff must be held guilty of such contributory negligence as bars his recovery.

5. ———: **Usual Care: Evidence.** The mere fact the street commissioner filled the ditch in question in the same way he filled all other ditches from which he removed box culverts, does not prove that he was not guilty of negligence. A standard of care and safety cannot be established by such facts.

6. ———: **Construction: Continued Care.** Where the petition counted, not only on the original negligent filling of the ditch from which the box culvert had been removed, but also on a continuing nuisance and a continuing duty of the city to keep its streets in safe repair, plaintiff cannot be confined alone to the negligent construction or the filling of the ditch with loose earth.

Appeal from Johnson Circuit Court.—*Hon. William L. Jarrott*, Judge.

AFFIRMED.

*James A. Kemper* and *Charles E. Morrow* for appellant.

(1) The demurrer to the evidence should have been given. The petition declares upon a defective construction; that is, that a certain box culvert in a dirt street was negligently and carelessly removed and the place filled in with dirt. Haines v. Pearson, 100 Mo. App. 551. Inasmuch as all the evidence shows that the place was filled in the usual and customary way and was safe for travel when finished, and that if it ever became unsafe and dangerous it became so afterwards by reason of the rains and the travel over it, plaintiff failed to make a case under his petition and the instructions in the nature of a demurrer to the evidence, asked by defendant at the close of plaintiff's evidence and again at the close of all the evidence, should have been given. The judgment was for the right party, and must stand, regardless of any alleged error in the instruc-

tions. Haines v. Pearson, supra. (2) The court erred in granting a new trial on account of instruction seven given for defendant. This instruction was properly given in this case and has been approved. Womach v. St. Joseph, 168 Mo. 236; Wheat v. St. Louis, 179 Mo. 572; Kaiser v. St. Louis, 185 Mo. 374; Coffey v. Carthage, 186 Mo. 585; Jackson v. Kansas City, 106 Mo. App. 57.

*O. L. Houts* for respondent.

If for any reason assigned in the motion, the verdict should have been set aside, this court will affirm the ruling of the trial court. Ittner v. Hughes, 133 Mo. 679; Hewett v. Steele, 118 Mo. 463; Bank v. Armstrong, 92 Mo. 265; State ex rel. v. Adams, 84 Mo. 310. The trial court committed error materially affecting the merits of plaintiff's case in giving instruction 7, at the request of defendant, and the new trial was properly granted for that reason. (1) The instruction told the jury that if plaintiff knew, or could have known of the "rut or depression" in the street and could have avoided it, he could not recover. That is, that mere knowledge of the existence of the "rut or depression" with no knowledge that it was dangerous, would preclude a recovery as a matter of law in the case. That, of course, is not the law. In addition to knowledge of the "rut or depression" plaintiff must have had knowledge that it was dangerous and necessarily dangerous before he would be precluded from recovering because he attempted to use the street and pass over the "rut or depression." And whether plaintiff had such knowledge could not have been determined by the court as a matter of law. That was a question of fact which should have been submitted to the jury, had there been any evidence to base such submission upon. Beach on Contributory Negligence, sec. 273; Horton v. Ipwich, 12. Cush. 448; Holloway v. City, 7 N. Y. Supp. 363. Un-

der the decisions of this court the instruction is clearly wrong. Graney v. St. Louis, 141 Mo. 180; Maus v. Springfield, 101 Mo. 613; Chilton v. St. Joseph, 143 Mo. 192; Gerdes v. Iron & Foundry Co., 124 Mo. 347; Flynn v. Neosho, 114 Mo. 567; Barr v. City of Kansas, 105 Mo. 560; Perrette v. City of Kansas, 162 Mo. 238; Beauvais v. St. Louis, 169 Mo. 500; Perrigo v. St. Louis, 185 Mo. 274. (2) The instruction is erroneous because of the words "or by the exercise of ordinary care could have known." In other words, it required plaintiff to look for defects in the street. That was not the duty of plaintiff. It was the duty of defendant to look for defects and to keep the streets in a reasonably safe condition. Plaintiff had a right to presume that defendant had done its duty and that the street was not in a dangerous condition. Perrette v. Kansas City, 162 Mo. 238; Holloway v. Kansas City, 184 Mo. 29; Roe v. Kansas City, 100 Mo. 190; Drake v. Kansas City, 190 Mo. 385; Stout v. Columbia, 118 Mo. App. 439. (3) The instruction should not have been given because there was not a scintilla of evidence to base it upon, or tending to show that plaintiff knew of this "rut or depression" or of its dangerous condition, and he could not have known, because it was completely concealed and hidden. Kossman v. St. Louis, 153 Mo. 293; Perrette v. Kansas City, 162 Mo. 238; Holloway v. Kansas City, 184 Mo. 19.

GANTT, J.—This is an appeal from an order of the circuit court of Johnson county, granting the plaintiff a new trial after a verdict for the defendant.

The action was one for damages caused by an alleged defective and dangerous condition of a street in the city of Warrensburg. The petition in substance alleged that the city of Warrensburg, on the 17th day of December, 1902, and for a long time prior thereto, was and ever since has been a municipal corporation

under the laws of this State, and that it had power and control over the public streets within its corporate limits and had authority to establish, open, alter and repair said streets so as to render them safe and secure for the public use and travel thereon, and it was its duty to so maintain and keep in repair the said streets so that at all times they should be safe and secure for public use. Plaintiff further stated that on said 17th of December, 1902, Main street, sometimes called South Main street, and West King street were two of the streets and public thoroughfares of the said city, Main street running north and south and King street running east and west, crossing each other at right angles; that long prior to said 17th of December, 1902, defendant had caused a culvert to be constructed and made on the north line of said King street extending across said Main street in said city at the crossing of said streets; that said culvert or gutter was about two feet deep and about eighteen inches wide, constructed of boards or planks covered with earth or dirt; that on or about the 8th of December, 1902, the defendant negligently and carelessly removed said boards or planks and earth from said culvert and filled the same with soft or loose dirt or earth and by reason thereof rendered said streets and said culvert unsafe and dangerous to persons driving along and across said streets, and said street remained in such unsafe and dangerous condition on the 17th day of December, 1902, all of which defendant, its agents and servants, well knew and by the exercise of ordinary care might have known. Plaintiff says that on the 17th of December, 1902, while he was driving and being driven in a buggy drawn by a team of horses southward along said Main street towards King street at the intersection of said streets where said culvert had been by the carelessness and negligence of defendant rendered and permitted to remain in unsafe and dangerous condition as aforesaid,

the front wheels of said buggy in which plaintiff was driving or being driven, dropped suddenly or sank into said culvert or excavation, whereby and by reason of which, plaintiff, without knowledge of the said dangerous condition of the said street and without any negligence upon his part, was thrown violently over the dash board of said buggy upon said horses and under their feet and upon the ground with great force and violence, by reason of which plaintiff was greatly and permanently injured in his arms, legs, chest, spine, abdomen and whole body, and rendered unable to work, and caused to lose much time, and suffer great mental and physical pain and anguish and has been compelled to expend large sums of money for medicines and medical attendance, to his total damage in the sum of fifteen thousand dollars, for which he prays judgment.

Defendant in its answer admitted its incorporation and that the streets mentioned were public streets and highways of said city as stated in the petition, but denied the other allegations, and pleaded contributory negligence. The reply was a general denial.

The evidence tended to show that a wooden culvert was located across Main street and extended across said street and had been so located for a number of years prior to the 17th of December, 1902. On or about December 8, 1902, the street commissioner of the said city, with other employees of the city, removed this boxing or wooden culvert, leaving a ditch or excavation some 18 inches or two feet in width and about the same depth as the place where the culvert had been located. The sides of the ditch were left perpendicular or almost so and were compact and hard from long and continuous use of the street by the public. After removing the boxing, the street commissioner caused the same to be filled with loose dirt and left it. The wheels of vehicles passing along the street immediately afterwards

sank into this loose dirt and jolted or bumped against the sides of the ditch. During the intervening week from the 8th to the 17th of December, rain and sleet fell and the passing wheels of vehicles dropped to the bottom of the ditch, and in some instances, as the evidence tended to show, sank to the axles of the vehicles. The evidence for the plaintiff also tended to show that the dangerous condition was hidden from persons passing along the street by the loose dirt thrown into it and by water and mud covering the ditch and the street. A number of plaintiff's witnesses testified that on the day of plaintiff's injury, they drove into this ditch unaware of its condition, but were not seriously injured. They testified that the ditch could not be seen on account of the loose dirt in it and the water over it, and they did not see it or know of it until the wheels of their conveyances dropped into it. Other witnesses testified to having seen the street commissioner and his employees removing the culvert and filling the ditch, and testified that it was left in an unsafe condition by the commissioner; one of them testifies that he spoke to one of the city employees engaged in the work and said to him, "If you don't fix this place better someone will get hurt here." The evidence tended to show that the plaintiff was a stockman, and a butcher, and lived in Warrensburg, and had a slaughter house about a mile and a half southwest of the city; that on the day he was injured he got in the two-horse buggy with Frank Houts to ride with him to the plaintiff's slaughter house, as Houts went to his home. As the plaintiff and Houts approached this place they could see the water in the rut, but could not tell how deep it was. They were traveling in a trot and as they were attempting to cross this place the front wheels of the buggy dropped into the rut, the left wheel going down to the hub, and plaintiff was thrown onto and over the dash board onto the double-trees. This frightened the horses and

they ran and plaintiff became entangled with the stay straps and double-tree, and Houts, who was driving, in order to stop the team, turned them into a telephone pole by the side of the road, and when they struck this the horses freed themselves from the buggy and the plaintiff was found to be injured.

Defendant's evidence tended to prove that its street commissioner had the box removed from across Main street; that it was sixteen inches wide and fourteen inches deep, and that they took it out by digging by the side and lifting the box out and then put the dirt back in the hole, and also put in other loose dirt in the place from which the box had been removed, and this dirt was tramped in with the foot and when the trench was filled it was rounded up on top some twelve inches high above the level of the surface. Witness for the defendant also testified that this was the way they always fixed them up, the way they always left them; that this was the usual and customary way of fixing places of that kind. Defendant also introduced evidence tending to show that the condition of the rut was not as dangerous as stated by plaintiff's witnesses and that other people in their usual ways of travel had crossed it with loaded wagons and other vehicles. The street commissioner testified that after filling the ditch he left it and neither saw nor heard any more of it until he heard of plaintiff's injury. Mr. Brewer, one of the city councilmen and a member of the street and alley committee, testified that he had passed over this ditch daily from the time the culvert was removed until the plaintiff was injured; that he had hauled a load of wood over that place on the day before plaintiff was hurt, and he had no more difficulty there than he did at other places in the road, that the roads were all bad. It had been raining and had sleeted the day before.

At the time of the occurrence the plaintiff was being driven in Hout's buggy in a trot at the rate of

about four or five miles an hour. Neither Houts nor plaintiff knew that the culvert had been removed or of the existence of the ditch or that it was in a dangerous condition. The court over the objections and exceptions of the plaintiff gave the following instructions for the defendant:

No. 4. "The court instructs the jury that if you find and believe from the evidence that the defendant city was not negligent in removing the culvert or gutter from across Main street and filling the place from which it was taken with dirt or earth, and that after the same was removed and the place so filled with earth, or dirt, said street at said place was in a reasonably safe condition for the use of the public, then you must find for the defendant; although you may believe that the same afterwards became in an unsafe and dangerous condition from the rains and travel thereon or from any other cause."

No. 5. "The court instructs the jury that the defendant city had a perfect right to remove the culvert or gutter from across Main street, and unless you find and believe from the evidence that the defendant failed to exercise ordinary care in filling the place from which the same was removed, so that the same was unsafe and dangerous and not reasonably safe for travel thereon in the ordinary modes of travel by persons exercising ordinary care and caution for their own safety, then you must find for the defendant."

No. 6. "The court instructs the jury that it is not for every defect or imperfection in a street, even though it may cause an injury, that the defendant city is liable, but that the defect or imperfection must be such that on its account the street is not reasonably safe for the people traveling thereon when exercising ordinary care for their own safety and traveling in the usual modes."

No. 7. "The court instructs the jury that if you find and believe from the evidence that the plaintiff knew, or by the exercise of ordinary care could have known of the rut or depression in the street at the place where plaintiff claims to have been injured, and by the exercise of ordinary care could have avoided it, then your verdict will be for the defendant."

No. 8. "The court instructs the jury that the burden of proof in this case devolves upon the plaintiff to prove to your satisfaction by the greater weight of credible testimony in the case, that the defendant city was negligent in removing the culvert or gutter from across Main street and filling the place from which the same was taken with earth or dirt, at the place where the plaintiff claims to have been injured; and by the burden of proof is meant the greater weight of the credible testimony in the case."

No. 9. "The court instructs the jury that the defendant city is not liable as an insurer of the safety of those who travel along its streets. Even if you find that the plaintiff was injured upon the street of the defendant city, that fact is not sufficient in itself to enable plaintiff to recover unless you find that the city negligently and carelessly removed the gutter or culvert on Main street and filled the same with earth or dirt, rendering the same not in a reasonably safe condition for travel upon it at the place where the plaintiff alleged he was injured, and that plaintiff was injured by such negligence, without any fault or negligence on the part of the plaintiff directly contributing thereto."

I. The only proposition for consideration on this appeal is whether the circuit court erred in granting plaintiff a new trial. The circuit court assigned as its reason for granting a new trial that it had erred in giving defendant's seventh instruction, which is in these words: "The court instructs the jury that if you find and believe from the evidence that the plaintiff

knew or by the exercise of ordinary care could have known of the rut or depression in the street, at the place where plaintiff claims to have been injured and by the exercise of ordinary care could have avoided it, then your verdict will be for the defendant.'' The circuit court was of opinion that it erred in instructing the jury that if plaintiff knew, *or could by the exercise of ordinary care have known of the rut or depression in the street* he could not recover, instead of directing them that if plaintiff knew *of the defect and that it was dangerous* and by the exercise of ordinary care could have avoided being hurt, he could not recover. Our learned brother of the circuit court correctly construed this instruction, as telling the jury in plain words that *knowledge* alone of the defect in the street precluded a recovery by plaintiff, and that it was an incorrect statement of the law, and he committed no error in granting a new trial on that ground. Defendant urges that the instruction was in substance the same as the one approved in Womach v. St. Joseph, 168 Mo. 236, but in that case the instruction was that ''if the condition of the sidewalk was *dangerous* and the plaintiff *knew* it, unless plaintiff exercised ordinary care to avoid being hurt, she could not recover.'' The authorities cited by learned counsel for defendant do not sustain their contention. It is one thing to advise a jury that if a traveler knows of a defect in a street, with no knowledge that it is dangerous, and fails to use the care which a reasonably prudent person would exercise under like conditions and is injured he cannot recover, and a very different thing to instruct a jury that if a traveler knows of the *dangerous condition* of a highway and by the exercise of ordinary care could avoid it, but does not, he cannot recover. When a person voluntarily attempts to pass over a sidewalk or other highway which he knows to be dangerous by reason of some obstruction or defect therein, when he might avoid it

by the exercise of ordinary care, he is guilty of contributory negligence.

In Cohn v. Kansas City, 108 Mo. 392, the action was against the city for damages resulting from personal injuries sustained by reason of a defective sidewalk and the court at the request of plaintiff instructed the jury that the fact that plaintiff knew the condition of the street would not prevent a recovery "if she used such care in attempting to pass along said street as persons ordinarily use under such circumstances," and in another instruction the court told the jury that "ordinary care is just such care as a person should ordinarily exercise under such circumstances." This court said: "The court erred in both of these definitions; for ordinary care is that care which a prudent person ordinarily uses under like circumstances, which is another and different thing from such care as persons ordinarily use under like circumstances."

In this case the circuit court properly directed the jury that "ordinary care as used in these instructions means such care and prudence as an ordinarily prudent person would exercise under the circumstances detailed in evidence, and negligence means the failure to exercise ordinary care." In its first instruction for the plaintiff, the court directed the jury "that it was the duty of the city to exercise reasonable care to keep the streets in a reasonably safe condition for the passage along such streets of persons in the exercise of ordinary care, in vehicles."

In Perrette v. Kansas City, 162 Mo. 238, the court had occasion to consider this question. The circuit court in that case instructed the jury that it was the duty of the city to keep the sidewalk in a condition reasonably safe for the use of the public and the plaintiff had the right to presume that this duty had been performed.

In the discussion of that instruction it was said:

"The first instruction is criticised upon the ground that it told the jury that the sidewalk, where the alleged accident occurred, was in a condition reasonably safe for the use of the public in the face of the fact that the plaintiff himself swore positively that he passed over the walk twice a day, morning and evening, at the place in question, and that it was 'in pretty bad shape all the time.' If plaintiff knew of the unsafe condition of the sidewalk at the point where the accident occurred, he had no right to presume that it was in a condition reasonably safe for the use of the public. [Brannock v. Elmore, 114 Mo. 55; Nixon v. Railroad, 141 Mo. 425.] This would be the indulgence of a presumption over an absolute fact and illogical;" and it was pointed out that he also testified that he did not know it was so bad as it was at the point where he was hurt and had never seen the hole before. Accordingly it was held the instruction was correct. In that case it was urged by the city that if the plaintiff failed to use ordinary care to discover the dangerous condition of the sidewalk he was not entitled to recover, but this court said: "The law, however, did not impose upon plaintiff the duty of looking for defects in the sidewalk, which, in the absence of knowledge of its *dangerous* condition, he had the right to assume was reasonably safe for travel."

In a leading case on this subject it was said: "The fact that plaintiff had notice of the existence of the excavation did not preclude her from a recovery if she fell into the ditch without any fault or negligence on her part." [Russell v. Columbia, 74 Mo. 494; Barr v. Kansas City, 105 Mo. 560; Graney v. St. Louis, 141 Mo. 180; Maus v. Springfield, 101 Mo. 613; Chilton v. St. Joseph, 143 Mo. 192.]

In Coffey v. Carthage, 186 Mo. 585, Fox, J., speaking for this court, said: "If plaintiff had no knowledge of the defect or hole in the sidewalk, then she had

the right to assume that the sidewalk was in a reasonably safe condition. But while she was entitled to act upon this assumption, still she must exercise that degree of care and caution in walking on said sidewalk which a prudent person ordinarily employs under similar cicumstances.'' This is, we think, a correct statement of the law. Other expressions in that case in regard to her duty to discover the defect in the sidewalk must be read in connection with the facts in the case and mean no more than that every traveler is bound to use ordinary care for his own safety and that if Mrs. Coffey in that case was proceeding carelessly and without paying any attention to where she was walking then she could not recover, but it is not to be understood that it is the duty of the citizen to inspect the sidewalks or streets for defects of which he has no knowledge, but he may act on the presumption the street is reasonably safe so long as he conducts himself as a reasonably prudent person would under like circumstances. If he knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care which a reasonably prudent person would in like circumstances, but he is not bound, merely because he encounters a defect which a reasonably prudent man would think he could pass by the exercise of care, to avoid the street entirely. In this case the evidence seems to be uncontradicted that neither plaintiff nor Houts knew of the removal of the plank culvert and the mere fact that there was mud and water in the street cannot be held as a matter of law to have apprised them of the danger in crossing the rut, but certainly according to their evidence it was not so glaringly and obviously dangerous that they must be held guilty of such contributory negligence as will bar a recovery. According to their testimony they were justified in thinking that they could

drive along the street safely by using that care and caution which ordinarily prudent men would exercise under the circumstances. Whether they were so doing was a question for the jury under proper instructions.

II. As to the contention that the city street commissioner was guilty of no negligence because this was the way he filled all such holes, we cannot give our approval. The jury were at liberty to find that he had been negligent in filling all of them. He could not establish a standard of care and safety by his own conduct in that regard.

Much has been said in the brief for defendant in regard to confining plaintiff to the negligent construction alone. We think the court properly submitted the issues as to that, but the petition counted, not only on the original negligent construction or act in leaving such a hole filled only with loose dirt, but the continuing nuisance and the continuing duty of defendant to repair the highway. This defect was not the act of a third party of which the city had no notice but was the city's own act of which it was bound to take notice.

Our conclusion is that the seventh instruction was reversible error and should not have been given. Otherwise the case seems to have been well tried. The judgment of the circuit court granting a new trial was right and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.