THE STATE EX REL. CITY OF CAMERON v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—9 S. W. (2d) 876.

Division Two, October 6, 1928.

*Walter E. Trice, J. M. Johnson* and *Dan H. Frost* for relator.

*Pross T. Cross* and *Gerald Cross* for respondents.

HENWOOD, C.—This is a proceeding by certiorari to review the record of the Kansas City Court of Appeals in affirming a judgment against the city of Cameron, relator herein. In the original suit, Emma Wyckoff, as plaintiff, obtained a judgment for damages

in the sum of $6000 against the city of Cameron, for personal injuries suffered by her while walking on a defective sidewalk in said city. Its appeal having resulted in an affirmance of the judgment, the city now seeks to quash the record of the Court of Appeals, alleging a conflict between the opinion of that court and controlling decisions of this court.

In order that the questions involved in the alleged conflict may clearly appear, we quote at length from the opinion of the Court of Appeals, as follows:

"The facts show that plaintiff was injured about eleven P. M. of January 26, 1924, while walking upon 4th Street in the city of Cameron. She fell upon an icy sidewalk, breaking off the head of the femur bone. Plaintiff was a widow, past sixty-three years of age, and worked at a store in the city of Cameron. She was on her way home from the store, having traversed about three blocks at the time she fell. The sidewalk was composed of flagstones about three and one-half feet square. There was a defect in the sidewalk where she was injured that had existed for upwards of two years, caused by a depression in a broken flagstone. The depth of the depression ranged from one and a half to five inches. The testimony is that the sidewalk at the depression was 'broken,' 'ragged,' 'rough,' 'slanting,' 'bulged,' and 'ridged up;' that water would collect in the depression, or broken place, and when the weather was cold enough the water would freeze and become slippery. Plaintiff's lunch had been brought to her earlier in the evening, and at the time she fell she carried a small lunch basket on her arm and had her hands in a muff, the night being very cold. She testified that she did not know whether the ice that had frozen in the broken place was smooth, but that the walk was 'all rough and bulged and ice had frozen in there;' that on account of the cold she was hurrying home.

"There is some conflict in the testimony as to whether there was a general snow and icy condition over the city at the time of the casualty, but plaintiff's testimony tends to show that while there had been a snowfall some days prior to this time, the streets and sidewalks of the city at the time in question were generally free of ice and snow except in depressions and low places where water from melted snow and ice had collected and frozen. There was no precipitation on Thursday, Friday or Saturday prior to plaintiff's fall.

"Defendant's evidence shows that on January 24th the highest temperature was thirty-seven degrees above zero, which prevailed from eleven A. M. to four P. M., and the lowest temperature was twenty-two degrees above zero, which occurred at midnight of the 24th; on the 25th the highest was twenty-two above, which occurred at midnight on the 24th, and the lowest on the 25th was eight degrees above zero, which occurred at midnight of the 25th; on the

26th, the highest temperature was thirty-one degrees, which occurred at three P. M., and the lowest eight degrees above zero, which prevailed from midnight until four A. M. It appears from this testimony that the last thawing weather before plaintiff fell was between eleven A. M. and four P. M. of January 24th.

"Defendant insists that its demurrer to the evidence should have been sustained; because, first, there was no liability shown on the part of the defendant, and second, plaintiff was guilty of contributory negligence as a matter of law. We think there is no question but that plaintiff made out a case to go to the jury on the question of the city's negligence. Defendant contends that there was a general snow or icy condition of the streets and sidewalks in the city at the time plaintiff fell and that there is no evidence that plaintiff fell over any rough or rigid ice. The evidence taken in its most favorable light to plaintiff shows no general snow or icy condition present. There is ample evidence of constructive notice to the city of the presence of the ice as well as the defect in the sidewalk itself. It is contended that the ice might have melted from the terrace during the day and run into the depression and frozen the night that plaintiff fell, and, therefore, the city had no notice. According to the temperature shown by the testimony of defendant's witness, water could not have run into the depression after four P. M. of January 24th, two days prior to the time plaintiff fell, as there was no thawing weather between those dates. Defendant's street commissioner testified that he was over the sidewalks of the city at least once a week, looking for defects, and that he was over the sidewalk where plaintiff was hurt the night of the injury. One of the proximate and concurring causes of plaintiff's fall and injury, was the defect in the sidewalk itself, which had existed for two years or more. This, together with the presence of the ice, caused plaintiff's injury. Constructive notice was shown as to the presence of both the ice and the defect in the sidewalk.

"It is claimed that plaintiff was guilty of contributory negligence because she testified that on the morning of the 25th, while going to work, she passed over the place where she fell; that it was in the same condition then as it was when the casualty occurred; that she was hurrying home with knowledge of the defect, with a basket on her arm and her hands in her muff. In this connection, much emphasis is placed upon the following testimony of plaintiff on cross-examination:

" 'Q. How were you walking, with your head down? A. No, sir. I was walking straight ahead.

" 'Q. You were not walking like Mr. Cross said, rushing? A. Well, I was going straight home.

" 'Q. And it was not with your head down, going tripping along there? A. Well, I was walking along at a good gait.

" 'Q. You were not paying any attention to the walk then, were you? A. Well, the walk was very good every place until I got to that.

" 'Q. You did not pay any attention to that? A. I did not need to. The walk was perfectly good all the way from the store there.

" 'Q. I say, you did not pay any attention? A. No, sir; if that walk had been good, I would have walked on straight home.

" 'Q. You say you did not pay any attention, though, to the walk up to the time you fell? A. No; I just walked right on.'

"The mere fact that plaintiff knew of the defective condition of the sidewalk does not as a matter of law bar recovery on her part. The law in reference to a situation of this kind is stated in Heberling v. City of Warrensburg, 204 Mo. 604, 617, as follows:

" 'If he [a pedestrian] knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care which a reasonably prudent person would in like circumstances.'

"We do not think that the fact that plaintiff carried a small lunch basket upon her arm, had her hands in her muff and was walking fast, by themselves or together with the other circumstances, should convict her of contributory negligence as a matter of law. The evidence shows that it was a very cold night, in the words of plaintiff it was 'a bitter night,' and it was not unnatural that she should attempt to keep her hands warm and to hurry home under the circumstances. It would appear to have been no less dangerous for her to have her hands in her pockets or under her coat than to have to use a muff. The carrying of the lunch basket was not unnatural. Defendant claims that plaintiff was so feeble that her daughter accompanied her home at nights, but the evidence shows that the daughter did not always go home with plaintiff, and when she did so it was not to assist her, but for company. Plaintiff testified to the effect that she was able-bodied and strong for a woman of her age. It is claimed that plaintiff's testimony that we have quoted, shows that she was taking no care whatever in walking over this defect in the sidewalk, of which she had knowledge. The burden of proving contributory negligence was upon defendant. [Buesching v. Gaslight Co., 73 Mo. 219; Mitchell v. City of Clinton, 99 Mo. 153.] While defendant might take advantage of plaintiff's testimony, given in her behalf, without introducing any direct testimony itself on the question in order to establish plaintiff's contributory negligence (Buesching v. Gaslight Co., supra; Beane v. City of St. Joseph, 211

Mo. App. 200, 210, 211), yet the burden is upon defendant to show affirmatively that plaintiff was guilty of such acts as to convict her of contributory negligence as a matter of law, and not leave this question to mere guess or speculation.

"The testimony of plaintiff that we have quoted is susceptible of the construction that she was not paying any attention to where she was going, up to the place at which she fell, for the reason that the walk was perfectly good up to that place, of which she had knowledge. Whether the words 'up to the time you fell,' used by defendant's counsel in cross-examining this witness, were understood by plaintiff to relate to what happened between the time she left the store and the time she encountered the obstruction, is not clearly shown. It is a question of extreme doubt as to whether plaintiff did not have in mind, in testifying, the good sidewalk that existed from the store to the defective place. It would have been easy enough for counsel for defendant to have interrogated her directly upon the question as to what she was doing at the time she fell instead of directing her attention to what she was doing 'up to the time you fell' and not leaving any doubt as to whether she was paying attention to the good part of the walk before she fell as distinguished from the defective portion where she was hurt. We do not think that defendant has sustained the burden upon it to show affirmatively that plaintiff was not paying any attention to where she was walking at the place where she fell.

"We have examined the cases cited by the defendant and find them not in point. In Wheat v. St. Louis, 179 Mo. 572, much relied upon by defendant, the plaintiff drove his wagon over a large manhole protruding several feet above the surface of the street. The case of Kaiser v. St. Louis, 185 Mo. 366, was another case where plaintiff drove his wagon into a patently defective place in the street. The courts have often pointed out that there is a difference between cases where injuries are received by pedestrians upon sidewalks and those where drivers of vehicles upon a street are hurt. See Combs v. Kirksville, 134 Mo. App. 645, 648, 649; Smith v. Kansas City, 184 S. W. 82, 84. In the case of O'Neill v. City of St. Louis, 292 Mo. 656, 662, plaintiff was injured between 7:45 and eight o'clock at night by falling against a water-service box. She was thoroughly familiar with the situation and although there was sufficient light to see the obstruction, she was not looking at the sidewalk at the time she was injured. The facts in that case are not like those in the case at bar. The case of Megson v. St. Louis, 264 S. W. 15, is more favorable to plaintiff than to defendant. A mere reading of the case of Mullen v. Sensenbrenner Mercantile Co., 260 S. W. 982, shows that the facts in that case are entirely different from those

——

in the case at bar. We have examined the other Missouri cases cited by the defendant and find them not in point.

"It is insisted that the court erred in giving plaintiff's Instruction 2. The argument in support of this contention is based upon a misconception of the law. In this connection defendant states:

" 'The vice of that instruction is in this: Plaintiff knew that walk and its condition, she says she did, and if that walk was not a reasonably safe walk for plaintiff to pass over while in the exercise of ordinary care and she did pass over it, she was guilty of contributory negligence as a matter of law and hence she couldn't recover, and yet the court says that even under those circumstances she was entitled to a verdict.'

"From what was said in the case of Heberling v. Warrensburg, supra, the mere fact that the place was not a reasonably safe place for one to pass over in the exercise of ordinary care, and plaintiff knew of the defect, does not convict her of contributory negligence as a matter of law unless the defect was so obviously dangerous that no prudent person would attempt to use the sidewalk. The case of Border v. Sedalia, 161 Mo. App. 633, 636, 638, cited by defendant, recognized the rule laid down in the Heberling case."

I. Learned counsel for relator seriously contend that the ruling of the Court of Appeals that the plaintiff was not guilty of contributory negligence as a matter of law, and that defendant's demurrer to the evidence was properly overruled, is in conflict with the rulings of this court on similar facts.

A careful reading of the opinion of the Court of Appeals and relator's brief discloses at once that this contention is based upon a misconception, not only of the facts as determined by the Court of Appeals, but of that court's authority to determine the facts, so far as this proceeding is concerned. Counsel say, in their brief, that this "is a case where the pedestrian knew of the existence of the defect, knew it was dangerous, had it in mind when she came to the place, but because of the lateness of the hour and the weather attempted to hurry over it without exercising any care whatsoever, trusting in Providence to see her safely across." Judge BLAND, the writer of the opinion in question, says: "It is claimed that plaintiff was guilty of contributory negligence because she testified that on the morning of the 25th, while going to work, she passed over the place where she fell; that it was in the same condition then as it was when the casualty occurred; that she was hurrying home with knowledge of the defect, with a basket on her arm and her hands in her muff." Then, after quoting from plaintiff's cross-examination along this line, Judge BLAND further says: "The testimony of plain-

tiff that we have quoted is susceptible of the construction that she was not paying any attention to where she was going, up to the place at which she fell, for the reason that the walk was perfectly good up to that place, of which she had knowledge. Whether the words 'up to the time you fell,' used by defendant's counsel in cross-examining this witness, were understood by plaintiff to relate to what happened between the time she left the store and the time she encountered the obstruction, is not clearly shown. It is a question of extreme doubt as to whether plaintiff did not have in mind, in testifying, the good sidewalk that existed from the store to the defective place. It would have been easy enough for counsel for defendant to have interrogated her directly upon the question as to what she was doing at the time she fell instead of directing her attention to what she was doing 'up to the time you fell' and not leaving any doubt as to whether she was paying any attention to the good part of the walk before she fell as distinguished from the defective portion when she was hurt. We do not think that defendant has sustained the burden upon it to show affirmatively that plaintiff was not paying any attention to where she was walking at the place where she fell.'' Counsel have not cited any decision of this court, and we are aware of none, in which this court has taken a contrary view of similar testimony, or placed a contrary construction thereon. In this and other particulars, Judge BLAND, manifestly, followed the well-established rule of giving plaintiff the benefit of the most favorable view of the evidence as a whole. In thus comparing the facts as stated in relator's brief with the facts as stated in the opinion under review, it is apparent that counsel do not agree with the Court of Appeals as to its conclusions of fact. When confronted with a similar situation in the case of State ex rel. v. Daues, 288 S. W. l. c. 15, this court said: ''It seems to be difficult to convince some of our brethren of the bar that the Courts of Appeals of this State are courts of last resort; that within their several jurisdictions they are just as supreme as we are in ours. The ascertainment of facts as a prerequisite to the application of the law is a necessary incident of the jurisdiction conferred upon them. The ascertainment of the facts of a given case being wholly within the competence of the Court of Appeals, upon a review of its decision in a certiorari proceeding, we are bound by its conclusions in that respect; our power under the Constitution is limited to determining whether it has applied to such facts the same rule of decision which we have applied in our previous rulings to the same or a similar state of facts. Thereby the constitutional purpose of securing and preserving *uniformity in the general law* is fully subserved.''

Upon the facts in judgment, the opinion of the Court of Appeals is in complete harmony with our rulings, in a long, unbroken line of

cases. [Megson v. City of St. Louis, 264 S. W. 15; Kiefer v. City of St. Joseph, 243 S. W. 104; Devlin v. City of St. Louis, 252 Mo. 203; 158 S. W. 346; Heberling v. City of Warrensburg, 204 Mo. 604, 103 S. W. 36; Fischer v. City of St. Louis, 189 Mo. 567, 88 S. W. 82; Graney v. City of St. Louis, 141 Mo. 180, 42 S. W. 941; Maus v. City of Springfield, 101 Mo. 613, 14 S. W. 630.]

" 'A traveler on a highway may not properly be convicted of contributory negligence as (a) "matter of law" in using a highway with knowledge of its defects "unless the facts in evidence exclude any other fair and reasonable inference on the subject," and unless the defects known to him at the time were "of such [a] nature as to render his use of the highway necessarily dangerous to a person ordinarily careful" or "that an ordinarily prudent person . . . would not have attempted to pass over it." ' " [Megson v. City of St. Louis, supra, l. c. 23 (Court en Banc).]

"There was no evidence proving that it (the sidewalk) was so imminently dangerous that no person of ordinary care and prudence would use it as a pathway. Hence we overrule the assignment of error as to the submission of the case to the jury." [Devlin v. City of St. Louis, supra, l. c. 207.]

"If he (a pedestrian) knows of a defect and it is not so obviously dangerous that no prudent person would attempt to use the street, he may still use the street provided he exercises that care which a reasonably prudent person would in like circumstances." [Heberling v. City of Warrensburg, supra, l. c. 617.]

"The danger was not known to her as so obvious and glaring as to compel her to cease the use of the sidewalk and take to the street or to the other side and, if it be allowed that the city was negligent, it cannot be contended that it had the right to place upon appellant the hard necessity of an absolutely infallible judgment in the darkness." [Fischer v. City of St. Louis, supra, l. c. 578.]

"The mere admission on part of the plaintiff that she knew of the defective condition of the walk at the time of and for a long period before she received her injury, does not of itself constitute want of care on her part in the act of using the same, and is not to be held as conclusive evidence of negligence on her part." [Graney v. City of St. Louis, supra, l. c. 185.]

"Plaintiff admits he was aware of the gap or opening in the crossing, but the alleged defect in it was not of such nature as to render its use necessarily dangerous to a person ordinarily careful. His knowledge of it was entitled to consideration as bearing on the issue of his negligence, but it was not decisive of that issue nor did it of itself preclude a recovery." [Maus v. City of Springfield, supra, l. c. 618.]

It will suffice to say that the cases cited and relied upon by relator are readily distinguishable from this case on the facts, and that the rules invoked in such cases have no application in this case.

II.  Counsel further contend that the opinion of the Court of Appeals, in approving plaintiff's Instruction 2, conflicts with rulings of this court.  This instruction predicated a verdict for plaintiff upon a finding of all essentials, including a finding that she was *"in the exercise of ordinary care,"* while walking along and over the sidewalk in question, and at the time of her alleged fall and resulting injuries, etc.  The challenge of this instruction raises the same question as that presented by the demurrer to the evidence, that is, the question of whether plaintiff was guilty of contributory negligence as a matter of law, or whether the issue of contributory negligence was properly submitted to the jury.  What has been said on the demurrer to the evidence necessarily disposes of this contention.  An instruction based upon similar facts and of the same legal effect was approved in the case of Kiefer v. City of St. Joseph, supra, l. c. 108.

It follows that our writ should be quashed.  It is so ordered.  *Higbee* and *Davis, CC.,* concur.

PER  CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court.  All of the judges concur.