CARLOTTA COOPER v. JAMES C. DAVIS, Director General of Railroads, Etc., Appellant.

Division One, October 9, 1925.

1. **NEGLIGENCE: Street Crossing: Extension of Sidewalk over Drainage Ditch.** It is the duty of a railroad company, having undertaken to maintain an extension of a concrete sidewalk along a street leading to its station, by constructing a board platform or walk across a drainage ditch inside of and near the edge of its right-of-way, to maintain it in a reasonably safe condition for the use of pedestrians, by erecting a guard rail along the edge of the platform, so that pedestrians passing from the sidewalk to the platform in the night time, in the use of ordinary care, may not fall into the ditch; and that duty exists under the statute (Secs. 9944, 9945, R. S. 1919) whether the railroad and drainage ditch were constructed before or since the street was established.

2. ——: ——: ——: **Relative Duty of City and Railroad Company: Maintenance of Sidewalk.** The railroad was constructed on a dedicated right-of-way one hundred and twenty feet wide, and when constructed a drainage ditch was dug along the outer edge and within the right-of-way, and has ever since been maintained and now serves to drain both the right-of-way and a small city park. Afterwards a cross street on both sides of the right-of-way was established, and a concrete sidewalk up to the right-of-way,

on the side on which is the ditch, was constructed under the requirements of the city, and defendant railroad company undertook to extend said sidewalk across the ditch, to the platform in front of its station house, by constructing a platform or walk of boards, but leaving its edges unguarded, and has long acquiesced in the use of said crossing by the public. *Held*, that, under the statute (Secs. 9944, 9945, R. S. 1919), it was the duty of defendant to contruct said extension or crossing over the ditch, and the duty to construct included the duty to make one that was safe, and defendant, having invited the public to make use of such extended walk or crossing in coming to its station, cannot be heard to say that, regardless of the depth or width of the ditch, it owed no duty to pedestrians to place a guard rail along the edge of the platform or extended sidewalk or make other provision for the safety of persons using it with reasonable care; and in an action against the railroad company alone for personal injuries sustained by a pedestrian who fell into the ditch on a dark night, the liability of the city and its governmental duty to maintain sidewalks are not for consideration.

Corpus Juris-Cyc. References: Railroads, 33 Cyc., p. 286, n. 14; p. 763, n. 36, 40; p. 806, n. 59; p. 897, n. 96.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*Edw. J. White, Thos. Hackney* and *L. A. Welch* for appellant.

(1) The railroad tracks and drainage ditch were constructed prior to the platting of the town and dedication of Third Street. The burden, therefore, of making the sidewalk reasonably safe for travel at the place where it crossed the existing railroad ditch, rested upon the city, and not on the railroad company; and defendant owed the plaintiff no duty to light the street or erect barriers at the crossing of the ditch. The keeping of sidewalks in a reasonably safe condition for travel is

not a police regulation, but is a governmental duty resting upon the municipal corporation and cannot by the city be shifted to or imposed on any person or property holder without his consent.   Ford v. Kansas City, 181 Mo. 146; Russell v. Sincoe Realty Co., 240 S. W. 147; Megson v. Griswold, 256 S. W. 496; Beck v. Heim Brewing Co., 167 Mo. 195.   (a)   The State in the exercise of its police power had the right to require the railroad to maintain the ditch and drain in question to carry off the surface waters, and this power was exercised by the Legislature in the passage of the statute, now Sec. 9953, R. S. 1919.   Tranbarger v. C. & A. Railroad Co., 250 Mo. 46.   The open ditch, therefore, on the west side of the railroad track, which had been previously constructed was maintained in strict conformity to this statute.   It was necessary for the purpose of draining the surface waters from the railroad track and the city park.   This ditch being thus lawfully constructed and maintained cannot be held a nuisance.   A ditch already existing and not otherwise unlawful does not become unlawful when the land to which it is immediately contiguous is dedicated to the public as a way, although it prevents the way from being as safe as it otherwise would have been. Dyer County v. Railroad, 87 Tenn. 712; Robins v. Jones, 143 Eng. Reprint, 768; Cornwell v. Met. Sewers Comrs., 156 Eng. Reprint, 652; 14 A. L. R. 1412, note d; Independence v. Mo. Pac. Ry. Co., 86 Mo. App. 589.   (b)   The rule is not changed by statute.   Secs. 9945, 9946, R. S. 1919.   There is no allegation in the petition that the railroad company failed in any respect to construct or maintain the sidewalk of the width and materials required of other abutting property owners.   On the contrary, it was conceded on the trial that the railroad company had not only constructed the concrete sidewalk to conform to the sidewalk in front of other property, but at the place where this walk crosses the ditch the company had placed four timbers across the ditch, thus widening the sidewalk at that point from four feet to seven and a half

feet. It was not contended that these timbers made the sidewalk less safe for public travel, but it was conceded that these timbers enhanced the safety of the sidewalk at the point in question. These sections of the statute had no effect of thrusting upon the railroad any duties not existing at common law, and not embraced within the very terms of the statute. Beck v. Heim Brewing Co., 167 Mo. 195. (2) As abutting owner there was no duty on the railroad to guard the ditch against a traveller who might accidentally or otherwise wander from the highway, the ditch not being a nuisance but being maintained in conformity to the State statute, and the sidewalk having been built according to the city's plan. Gallagher v. Tipton, 133 Mo. App. 557; Hays v. Columbia, 159 Mo. App. 431; Bratz v. Fargo, 27 L. R. A. (N. S.) 1169; Collins v. Decker, 105 N. Y. Supp. 357; Town of Elsmere v. Tanner, 166 S. W. 220; Village of Mineral City v. Gilbow, 81 Ohio St. 263. (3) It is admitted that the railroad company constructed a safe, wide platform from its depot on the east side of its tracks, extending north from the depot to Second Street and south from the depot to Third Street, and connecting with the sidewalks of these two streets. This platform was the only approach to its depot which the public was invited to use. Chase v. Railway, 134 Mo. App. 660; Alabama Ry. v. Godfrey, 156 Ala. 202.

*Atwood, Wickersham, Hill, Levis & Chilcott* and *T. J. Hackler* for respondent.

(1) The State has an inherent right to require railroads to construct and maintain crossings and sidewalks at highways, whether the highway exists before the railroad is built, or is constructed afterwards. Secs. 9944, 9945, 9946, 10858, R. S. 1919; State v. Ry. Co., 108 N. W. 261; Commonwealth v. Ry. Co., 58 S. W. 478; Paducah Ry. Co. v. Commonwealth, 80 Ky. 147. (2) Third Street had been maintained across these tracks for more

than fifty years, and the railroad company had construct-
ed and maintained the cross walks. It cannot now claim
that it was not its duty to maintain them in a reasonably
safe condition. (3) The duty to construct and main-
tain the sidewalks was put upon the railroad company
by statute. Secs. 9944, 9945, 9946, R. S. 1919. (4) The
railroad in compliance with its inherent and statutory
duty did construct the crossing, put the boards between
the rails, laid the granitoid cross walk, and in order to
make the sidewalk wider placed the four timbers parallel
and level with the granitoid slabs. (5) The evidence
is uncontradicted that for many years the public gen-
erally, having business with the railroad company, used
the timbers in question (widened sidewalk) as a part
of the sidewalk. (6) The maintenance of an unguarded,
unlighted hole, immediately adjacent to a sidewalk or
path much used by the public, constitutes the mainten-
ance of a nuisance, and this is true regardless of whose
duty it is to keep the sidewalk in repair. Kaenter v. Mo.
Pac. Ry. Co., 218 S. W. 349; Benton v. St. Louis, 248 Mo.
98; O'Brien v. Heman, 191 Mo. App. 477; Goltz v. Gris-
wold, 148 Mo. 144; Buesching v. Gaslight Co., 73 Mo. 219;
Cooley on Torts, p. 660; Shearman & Redfield, Negli-
gence, 360; 29 Cyc. 1172, (48) Jelly v. Pieper, 44 Mo. App.
380; Butz v. Cavonaugh, 137 Mo. 503; Humphries v. Rail-
road Co., 84 S. C. 202, 14 A. L. R. 1397; Wright v. Saun-
ders, 36 How. Pr. (N. Y.) 136; St. Louis Ry. Co. v. Bell,
58 Okla. 84, L. R. A. 1917 A, 543. (7) Moreover, the plain-
tiff is entitled to recover herein, even if there had been no
duty upon the part of the railroad to maintain the side-
walk proper, because the uncontradicted evidence shows
that the defendant put the timbers alongside the grani-
toid slabs "to widen the sidewalk" all of which addition
was on the defendant's property, and there was a general
public user thereof for many years, and defendant main-
tained a nuisance alongside the timbers unlighted and

unguarded. Citations above. (8) The defendant contends that the duty of erecting such structures or maintaining such lights as were necessary to make the sidewalk reasonably safe for public travel where it crossed the ditch rested upon the city. This contention is not supported by the facts or the law. Independence v. Mo. Pac. Ry. Co., 86 Mo. App. 585.

LINDSAY, C.—In this case there was a directed verdict for defendant, and the appeal of defendant is from the order sustaining plaintiff's motion for a new trial.

The action is one for personal injuries sustained by the plaintiff through falling into a ditch, which was on the right-of-way of defendant's railroad in the city of Lee's Summit. The right-of-way and tracks of defendant extend north and south through the town. Third Street extends east and west, crosses defendant's tracks, and is a thoroughfare between the east and west portions of the town. The station building of defendant is located about one-half block north of the crossing of its tracks by Third Street. There are two tracks running along the west side of the station building. From the station building south, to the Third Street crossing, defendant maintains a paved approach to said station building. Upon the north side of Third Street is a concrete sidewalk, four feet in width, and the walk extends across the right-of-way. West of the two tracks mentioned, and within defendant's right-of-way, there was a ditch for drainage, extending north and south. Immediately west of defendant's right-of-way, and north of Third Street, was a small city park. The ditch served as a drainage for defendant's right-of-way, and also for this park. From about the west line of the right-of-way, where that line intersects the sidewalk, defendant maintained a platform or walk of timbers or boards, extending thence eastward across the ditch, and to about the ends of the ties of the westermost of its two tracks. This board platform, or walk, joined immediately upon the

sidewalk, on its north side and was level with it, was about three and one-half feet in width, and was ten or twelve feet in length. The ditch was between two and three feet deep.

The testimony was that the board extension had been there many years, and that the public walked upon it—people would "corner across" it in going to or coming from defendant's station building. Plaintiff introduced evidence to show that a guardrail could be placed at small expense, and without interfering with the safe movement of trains. This evidence was not objected to.

At about 8:30 o'clock of the evening on October 1, 1918, the plaintiff, accompanied by her mother, was on her way to defendant's station building, and walking eastward upon the concrete sidewalk that has been mentioned. It was dark, and plaintiff came upon the board platform or extension, and stepped or fell into the ditch and received the injuries for which she sued. Plaintiff's testimony was that there was "some sort of a light in the station building."

There was no guardrail at the ditch, and it was not lighted by defendant. The city maintained a street light on Third Street near by, but upon the night in question, it was not burning. It was agreed upon the trial that the construction of the railroad of defendant, where it was, was completed in September, 1865, and that from that time defendant and its predecessors had maintained regular service between St. Louis and Kansas City, through Lees Summit, and along the place mentioned. It was farther shown by defendant that the town of Lees Summit was orginally platted as the town of Strother; and, defendant introduced in evidence, a plat of the town of Strother, dated and filed for record on October 28, 1865, made by Wm. B. Howard, as owner of the land. The plat showed the course of the right-of-way of defendant, and that along this place it was 120 feet in width, and also showed Third Street and other streets as intersecting and crossing said right-of-way. Defend-

ant introduced an agreement made by said Howard on October 13, 1857, to convey land for right-of-way, should the railroad be located on his land. Plaintiff introduced the record of a deed dated March 12, 1866, conveying such right-of-way under said contract.

The plaintiff and her mother, prior to the day in question, had been residents of Garnett, Kansas, but had arranged to take up their residence in Lees Summit, and had shipped, by freight, their household goods from their former home to Lees Summit. They arrived at Lees Summit in the late afternoon of that day, and inquired of defendant's agent whether their household goods had arrived, and were informed that they had not, but were told by the agent that if they would come back after supper he would send a tracer for them. Thence they walked westward, along the sidewalk that has been mentioned, on the north side of Third Street, to a hotel about a block away. After supper they proceeded eastward along the sidewalk that has been described, on Third Street, intending to see defendant's agent, and on the way both of them stepped or fell into the ditch. Plaintiff's mother testified that they walked along "those boards and the walk together. . . . Those timbers along the sidewalk over the ditch." The plaintiff testified that it was dark as it could be; that she could feel the sidewalk under her feet, did not notice when she stepped off on some timbers; that the first thing she knew she was in the hole. She said they were not trying to cut diagonally across the railroad tracks; that they were trying to cross the same sidewalk they came on.

It is apparent from the record, and from the discussion of the respective counsel, that the trial court directed a verdict upon the theory that the crossing by Third Street of the railroad, having been made after the completion of the railroad, the defendant was under no duty to guard the place, and that the sole duty, if any, in that respect, was upon the city.

According to the statement in appellant's brief, the view of the trial court, upon the motion for a new trial, was, that "the statute requiring railway companies to construct sidewalks to conform to the city's plans thrusts the burden upon the railroad company to construct barriers where the sidewalk crossed railroad ditches, and that the question of the necessity of a barrier in this case was one for the jury."

The claim of error upon the part of the trial court in granting a new trial is grounded upon the contention that the ditch was a drainage ditch, authorized and required by statute; that the railway had been constructed and was in operation before Third Street was platted; that the company had constructed the crossing in the manner required by statute and had built the sidewalk of the width and materials required by the city; that the statute in requiring railroad companies to construct the crossing and to build a sidewalk according to the requirements of a city ordinance, does not require more than that; and does not require the company to construct and maintain other structures that might be necessary to the convenience and safety of the crossing; but that such structures must be erected and maintained by the corporation constructing and using the new way. There is no evidence that the city required anything more than the construction of the sidewalk, and it is clear from the evidence that the construction and maintenance of the board extension was a voluntary act on the part of the railway company.

Under Section 9944, Revised Statutes 1919, railway companies are required to construct and maintain a "good and sufficient crossing" where the railroad crosses public roads, or town streets, "now or hereafter to be opened for public use." That statute describes the manner of construction of such a crossing.

Section 9945, among other things, requires the railroad company, in cities and towns, to pave, and to construct a sidewalk over its right-of-way, at the crossing

of a street, "now existing therein, or which hereafter may be created and opened for public use . . . to the same extent, of like materials and of as good quality," as by the ordinance is required of the other property owners abutting upon such street. These are old statutes. They applied to the defendant railway company and its predecessors. The duty to make a crossing, and to construct a sidewalk included the duty to make one that was safe. There is not only no evidence of a condemnation proceeding in respect of Third Street, or of such being necessary, or of any objection on the part of defendant and its predecessors to this street crossing its right-of-way, but the evidence tends to show acquiescence therein from the beginning. The circumstances shown—the location of the railroad, where it was, the filing of the plat of the town showing Third Street and other streets, showing the right of way 120 feet wide at that place, defendant's station grounds—and the subsequent conveyance of the right-of-way by the owner who had platted the streets, and the acquiescence of defendant in this crossing, appear as acts related and interdependent. The earliest station about which there was testimony was burned about fifteen years before the time of the trial. It stood immediately at the line of the walk, on the north of the Third Street crossing. The circumstances all tend to show that the crossing of the railroad by the street was with the consent of the railroad company. Third Street could not be regarded as otherwise than as a legal street, and the crossing otherwise than as one established by due process of law. [Easley v. Mo. Pac. Ry. Co., 113 Mo. 236.] No ordinance requiring the construction of the sidewalk on Third Street was introduced in evidence, but there was evidence of its construction, and maintenance for a long period of years, across defendant's right-of-way, of the width and of materials conforming to that along other abutting property. Neither the city nor the railway company placed a guardrail along the sidewalk, and the place

where it crossed the ditch, but the company did place the board extension along that place, which, according to the evidence, was used generally by the public for many years.

We are cited to the case of Beck v. Ferd Heim Brewery Co., 167 Mo. 195. In that case the plaintiff sought to maintain an action against the defendant on account of the existence of an embankment abutting the sidewalk on the theory that it was the duty of defendant to erect a barrier to keep the earth from sliding down into the sidewalk. A demurrer to the petition was sustained, in that case, on the ground that there was nothing in the petition to show that the street and sidewalk, and the embankment on the defendant's premises, were not in the same condition in which they were left by the city authorities. The case is inapplicable here, because, in this case the petition alleges the construction of the extension, its use by the public, and its unguarded condition where it crossed the ditch, which was alleged to be "a nuisance and a pitfall." This is not a case wherein defendant's own premises were left in the same condition. It is not easy to conceive of any purpose the company could have had in maintaining the extension, located where it was, than that the public was invited and expected to use it, as a walk additional to the sidewalk.

The city was not made a party herein, and the question of its duty in the premises, or its liability, if any, is not for consideration. Nor, is the case one determinable on the mere ground of the liability, which might exist had there been constructed no more than the sidewalk proper, along the line of the street, within it, and within the space included by the intersecting boundary lines of the street and the right of way. It is not necessary to discuss the nature of, or the distinction between, the governmental duty of the city to maintain sidewalks, and the police power of the State, administered by the city for the purpose of requiring a railroad company to build sidewalks at crossings after the manner of other abutting property owners.

It is urged that the ditch, being in existence when the street was dedicated, and when the sidewalk was built, and being not otherwise unlawful, did not become so because the land immediately contiguous was taken for public use, and for that reason there was no duty on defendant to guard the place. The evidence does not show whether the ditch was a natural drain, or one excavated. A tile was laid in it, but it is not shown when it was done. Granted that the ditch existed before the sidewalk was built, the sidewalk proper, was construced under the requirements of the city; but, the company itself changed the condition for pedestrians from what it was, or would have been, under the requirements of the city. It did this in its own way, upon its own ground, by building an extension immediately contiguous to the ditch and maintained on its own ground. Having made and maintained it for the purpose of widening the walk, as counsel seem to urge, it cannot be heard to say that regardless of the depth or dangerous character of the ditch, it owed no duty to place a guardrail, or to make any other provision for the safety of persons using the extension. The fact that there was a ditch suitable to carry off the water from the right-of-way, such as was both authorized and required by the statute, has no bearing upon the question here. A ditch might be suitable to carry off surface and other water within the meaning of that statute—yet highly dangerous, unless covered or guarded, due to the fact that it was crossed by a way much used by the public. Its authorized existence as a drain, would not make less, the other duty to guard against its dangers under such circumstances. These two distinct duties may co-exist.

It is urged that Third Street was not an approach to the station building, and that defendant maintained a safe approach to the building. This was the wide platform, between the building and the tracks and extending from the sidewalk on Third Street north, to Second Street, and it is said that this was the only approach to the depot

maintained by defendant, which the public was invited to use. That contention cannot be granted. The evidence tended very strongly to show that the public was invited to use, and did use, the extension of the sidewalk, and has been doing so for many years, and the evidence showed that persons going to the depot on the west Third Street sidewalk and coming upon the extension were then and thence forward wholly upon defendant's right-of-way. The defendant did not confine to the sidewalk, persons approaching or making exit from its station building by erecting a barrier along the north side, where the sidewalk crossed the ditch, but, it prepared in its own way, and upon its own grounds, this addition to the way and left that unguarded. In Kaenter v. Mo. Pac. Ry. Co., 218 S. W. 349, the plaintiff was walking on a pathway leading from defendant's station. It does not appear from the statement that the path was one especially provided by the defendant in that case, but it was on the right-of-way, and the defendant maintained an excavation on its right-of-way, near the path. The plaintiff slipped, and fell through what appears to have been an insufficient barrier, into the excavation. A judgment for plaintiff was sustained. In that case there is no discussion of the question whether the excavation antedated the path. In the case at bar, since the plaintiff maintained the ditch and maintained the extension of the walk, and the open ditch was immediately under the inner edge of the extension, the question whether the construction of the railroad antedated the construction of the crossing and of the sidewalk was not material.

The extension of the walk was not on the ground dedicated to the public as a street, but on the ground of the defendant. In extending the walk, the defendant owed the duty to exercise ordinary care to make it reasonably safe to persons using it, or who came upon it in going to defendant's station as invitees.

The defendant had the right to maintain the ditch thus next to, or intersecting the sidewalk, or next to the

310 Mo. Sup.—41.

extension, but, in doing so, it was under the duty to so guard it as to render it secure for persons using the sidewalk or using the extension which defendant provided and this duty is not dependent upon how long the condition had existed. [Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Goltz v. Griswold, 113 Mo. 144.]

The question of defendant's negligence in what it did and what it failed to do was one for the jury and the order granting a new trial is affirmed. *Seddon C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY C., is adopted as the opinion of the court. *Ragland, P. J., Graves* and *Atwood, JJ.,* concur; *Woodson, J.,* absent.