JOHN CROCKETT v. THE CITY OF MEXICO and WABASH RAILWAY COMPANY, a Corporation, Appellants.—77 S. W. (2d) 464.

Division Two, December 1, 1934.*

*NOTE: Opinion filed at May Term, 1934, June 19, 1934; motion for rehearing filed; motion overruled at September Term, December 1, 1934.

*Mahan, Mahan & Fuller, J. H. Whitecotton, A. C. Whitson* and *Homer Hall* for Wabash Railway Company.

148

*W. W. Botts* and *Rodgers & Buffington* for city of Mexico.

*Fry, Hollingsworth & Francis* and *Olliver W. Nolen* for respondent.

150

WESTHUES, C.—This case comes to the writer on reassignment. Respondent, plaintiff below, obtained a judgment against appellants, defendants below, in the sum of $8,000 as damages for personal injuries alleged to have been sustained as the result of a fall due to a defective sidewalk on Calhoun Street at a point where it crosses the main line tracks of defendant railway company in the city of Mexico. From this judgment both defendants appealed.

The sufficiency of the petition has not been questioned in this court. The answer of defendant city contained certain admissions coupled with a general denial and a plea of contributory negligence. The answer of defendant city also contained the following:

"That the boards constituting the walk described in plaintiff's petition rested on solid ground and were not more than eight inches

wide, nor more than one and one-half inches thick and only one of such boards was missing and left a depression easily stepped over and not dangerous to pedestrians using said walk and obvious to anyone walking along said walk.''

The defendant railway company, by its answer, admitted its incorporation and its maintenance and operation of a line or railway through the defendant city. The answer denied other allegations of the petition and as a defense pleaded contributory negligence and also that defendant railway had not been notified of any alleged defect in the sidewalk and, therefore, was not liable.

After granting two applications for a change of venue and after a futile attempt to have the cause removed to the Federal Court the case was finally tried in the Circuit Court of Monroe County. From plaintiff's evidence we learn that the defendant's railroad tracks extended in an easterly and westerly direction through defendant city. Calhoun Street was a north and south street, which crossed the railroad tracks at grade. It had been open for public travel for fifty years and during all this time was a much traveled street. Defendant city has briefed the point that it cannot be liable in this case because there was no acceptance, by the city, of the railroad crossing in question as a public street. Evidence disclosed that on various occasions the city, through its board of aldermen, notified the defendant railway and also the Chicago & Alton Railway Company, the tracks of which are immediately to the north of defendant's tracks, to make certain repairs upon Calhoun Street at the railroad crossings. In the year 1906, the city notified the Wabash to construct a walk at the Calhoun crossing. Many witnesses testified that the crossing had been used by the general public for travel for more than forty years. The mayor of the city, a witness for defendants, testified: "It has been used by the general public for all kinds of traffic for fifty years." This evidence was sufficient to sustain a finding that the street, where it passed over the railroad crossing, was a public street. [43 C. J. 983, sec. 1766; Conner v. City of Nevada, 86 S. W. 256, l. c. 258 (2), 188 Mo. 148.]

Defendant railway company maintained that it could not be held liable because no notice of any defect had been served upon it by the city. The city on the other hand states:

"Under the law no liability in any event could attach to the city until thirty days had elapsed after the defect complained of first existed."

Constructive notice is sufficient and actual notice is not necessary to render a railroad company liable in damages for personal injuries which are sustained by reason of a defective sidewalk upon its tracks. [Sandretto v. Quincy, O. & K. C. Ry. Co., 218 Mo. App. 590, 265 S. W. 856, l. c. 859 (4, 5).] It is the duty of a railroad company to exercise ordinary care in keeping the sidewalks over its tracks in a reasonably

safe condition. Failing in this duty, it will be held liable for resulting damages, irrespective of notice from the city. [Cooper v. Davis, 276 S. W. 54, 310 Mo. 629.]

The primary duty of keeping the streets and sidewalks in a reasonably safe condition rests upon the city. This responsibility exists even though under the law a third person, in this case the railway company, is in duty bound to construct and maintain that portion of the sidewalk and roadway over its tracks. [Roth v. St. Joseph, 164 Mo. App. 26, 147 S. W. 490; McCarroll v. Kansas City, 64 Mo. App. 283.] The rule of law may be found in 43 Corpus Juris, page 992, section 1777, as follows:

"Although the railroad company may also be liable . . . that does not affect the liability of the municipality to the party injured."

The railway company argues that it "was under no duty to keep the walk in repair and was not liable for it being out of repair." Cases are cited in support of this rule but we do not deem them in point. They support the rule that a property owner owes no duty to the public to repair and maintain in a safe condition sidewalks abutting his property. [See Smith v. St. Louis-San Francisco Ry. Co., 275 S. W. 53.] The rule applicable to this case was well stated in Sandretto v. Ry. Co., 265 S. W. 856, l. c. 859.

"The case at bar is, however, vastly different from these and similar cases cited by defendant. The law requires the defendant, where it crosses a street, to construct and maintain its crossings so that they may be in a reasonably safe condition for travel (22 R. C. L., secs. 219, 220, pp. 991, 992); also to construct, reconstruct, and repair the part of the sidewalk which the railroad crosses. [Sec. 9945, R. S. 1919, (now Sec. 4758, R. S. 1929, Mo. Stat. Ann., p. 2143).] Defendant's property in this case does not passively lie along the side of the street, but actively occupies it, and the railroad is in duty bound to see that its occupancy thereof is not allowed to negligently interfere with its safe use by the public. [City of Independence v. Missouri, etc., Railroad Co., 86 Mo. App. 585, 591.]"

Appellants insist the trial court erred in not sustaining a demurrer to the evidence for the reason that plaintiff was guilty of contributory negligence as a matter of law. This requires a short resume of the evidence. Two witnesses testifed they had noticed the defect in the sidewalk about two weeks or more prior to September 6, the date plaintiff was injured. Arthur Sims, one of the witnesses, described the conditions as follows:

"I had observed it about the middle of August, that there was a broken board, before Mr. Crockett got hurt. The broken board was about the middle one. I was going over it one night and had sugar and potatoes my wife had told me to bring, kinda dark. I stepped in the hole and fell; never hurt me. That was about the middle of Au-

gust and I believe it remained in that condition until after Mr. Crockett was hurt, most sure it did. It was about the middle board between the tracks, and broken right in the middle, crushed down you see, deep enough I could get my foot under it, two inches any way.''

Plaintiff testified that he had not had occasion to cross over this walk for some time prior to the time he was injured and had not noticed the defect. Plaintiff further testified as follows:

''There was a noise, a car going by. I was pretty close to the railroad track on the south side. I suppose about 8 or 10 feet from the track, might of been closer. The car was going south, had just passed me and this truck hauling gravel was coming down by the Grennan Egg Factory going east. What attracted my attention was commenced honking the horn, I stopped, turned around and looked to see if it was a wreck, seen it was not, then I looked to see if No. 9 was coming. I turned left to see if it would be a wreck then turned back to my right to see if No. 9 was coming. I can't state exactly how far I was from the Wabash track, maybe a step or two. No. 9 is a passenger on the Wabash, comes into Mexico a little after 4 o'clock going west. When I saw No. 9 was not coming I started across the track north, I stepped in this hole where the board was broken between the main line tracks of the Wabash. It was not much nearer to one track than the other.

''Q. How did you step in it, describe to the jury how you stepped in it? A. Well, I just walked along there and made this step and took that hole and caught my foot in another broken board and threw me in a twist across the track.

''Q. Do you know whether your foot went into the hole? A. Yes sir.

''My right foot went in the hole, left foot caught in a piece of board and I fell in a twist on my left side.

''Q. What did you hit? A. Hit the sidewalk.

''Q. Switch track on the north side? A. Yes sir.

''Q. What did you do after you fell? A. I got up the best I could, seen what it was and seen it was a broken board; I got over to Mr. Sanford's.''

The defendant Wabash Railway Company maintained, at the trial, that there was no defect or broken board in the walk on the main line track. There was other evidence that the defect was plainly visible to anyone walking over the sidewalk and that this defect existed on the main line track. We have examined many cases upon the point in question and have come to the conclusion that whether or not plaintiff was guilty of contributory negligence in this case was a question for the jury. We desire to quote the following from Nixon v. Hannibal & St. J. Ry. Co., 141 Mo. 425, 42 S. W. 942, 1. c. 944, which we deem appropriate to the facts in this case:

"The question is whether or not, under this state of facts, plaintiff can be charged, conclusively, with contributory negligence in failing to see and avoid the danger. It appears nowhere from the evidence that plaintiff in fact saw the defect in the crossing before he rode upon it. We know of no rule of law which requires a traveler on a highway to look 'particularly' to see if it is free of defects. Railroad crossings are designed for use by the public as highways, and one passing over them is only required to exercise ordinary care, having in view all the circumstances. These circumstances include the known duty of a railroad company to make and maintain the crossing in the manner required by statute, the knowledge of the traveler of its previous condition and of the prior neglect of the company in respect to maintaining it, and his imperative duty to look out for running trains. Unless he sees the dangers, or, in fact, has them in mind when he attempts to cross, he cannot fairly be charged with contributory negligence as a matter of law. It cannot be said, then, as a matter of law, that plaintiff did see this defect, for the reason that by careful inspection it could have been seen, for the law imposed no such absolute duty upon him. He was only required to exercise ordinary care in the circumstances, and whether he did so or not was a question for the jury." [See, also, Gray v. City of Hannibal, 29 S. W. (2d) 710, l. c. 712 (5, 6) l. c. 713 (7, 9); State ex rel. City of Cameron v. Trimble, 321 Mo. 221, 9 S. W. (2d) 876.]

An examination of the late cases cited will disclose that the rule of law announced in the Nixon case has been consistently followed. We do find cases where this court has held a pedestrian guilty of contributory negligence as a matter of law but the facts in those cases are not similar to the facts in this case. See cases reviewed and discussed in Sloan v. American Press, 37 S. W. (2d) 884, 327 Mo. 470.

■ The trial court permitted plaintiff to introduce evidence of a fracture of a vertebra. Appellant railway company assigns this as error because it contends no such injury was pleaded. Plaintiff in his petition alleged "that his back and spine and the nerves, ligaments and muscles thereof were seriously wrenched, torn, bruised, contused and lacerated." These allegations may be termed general, but they specifically referred to injuries to the back and spine and were broad enough to cover a fracture of the vertebra. The defendant railway company met the issue at the trial and introduced a volume of testimony as to the extent of plaintiff's injuries, including evidence that plaintiff did not have a broken vertebra. Under the circumstances appellant was not prejudiced, even if technically correct in its position that an allegation to the effect that plaintiff's back and spine were lacerated did not include a broken vertebra. [Hance v. United Rys. Co. of St. Louis, 223 S. W. 123, l. c. 124 (4).]

■ Appellant railway company in its brief made six separate assignments of error pertaining to the admission and rejection of testimony. We will not discuss all of these assignments because a number of them are not supported by the record. In determining what evidence is competent or incompetent due consideration must be given to the issues involved. In this case it was incumbent upon plaintiff to prove that Calhoun Street, where it crossed over defendant's tracks, was a public thoroughfare. This fact was denied by both defendants. Plaintiff to support this issue offered evidence to the effect that city officers, by authority of the city council, conferred with the agent of the defendant company about the construction of a walk over the crossing in question. The evidence disclosed that the local agent of the defendant railway company at Mexico informed the officers of the city that certain officials of the company would be in the city on a day certain when that question could be taken up with them. This evidence was competent as tending to prove that both defendants treated and considered the crossing as a part of Calhoun Street. The identity of the agent of the railway was not determined by statements of the agent, as was the case in Carp v. Queen Insurance Co., 101 S. W. 78, 203 Mo. 295, l. c. 333, 334, but it was shown that he was in charge of the business and property of the defendant railway at Mexico and known to be their local representative. The objection to this evidence was, therefore, properly overruled by the trial court.

■ Error was assigned to the action of the trial court in excluding an opinion, by an expert, ''that the condition of the plaintiff's back as shown by the X-ray pictures might have been caused by his previous injury.'' On cross-examination of plaintiff's witness, attorney for defendant asked the following question, to which the court sustained an objection:

''Now, doctor, assuming that a man was thrown off a load of hay, by his team running away, would you think he would be more apt to get that condition of curvature of the spine than he would if simply walking along a walk and fall over?''

The answer to that question, even by an expert witness, would be speculative. The trial court permitted and the defendants offered an abundance of evidence tending to prove plaintiff's curvature of the spine was due to an injury plaintiff had received about twenty years previous when he fell from a load of hay. The doctors, who treated plaintiff at that time, were called as witnesses for defendants and testified in detail as to the injuries plaintiff received on that occasion. The answer to the question quoted above, if it had been permitted to be given, would not, in our opinion, have added any weight to this evidence. The assignment is ruled against appellant.

■ Counsel for appellant railway earnestly insists that the trial court erred in admitting evidence of repairs made in the walk after

the date of the alleged injury. Such evidence is generally inadmissible. Plaintiff's petition alleged that the walk was defective between the rails of the main line track; that it was at this point that plaintiff fell and was injured. Plaintiff's evidence supported this allegation. Defendant railway company attempted to prove, by witnesses, that the walk over the main line track had not been out of repair. Plaintiff's council, on cross-examination, attempted to show that the walk was out of repair where it crossed the main line track but that the witnesses were mistaken as to which was the main line track and which was the switch track. Note the following evidence of one of defendants' witnesses: "It was on the switch track between the rails of the switch track south of the main line track." Another witness for defendant testified that the walk on the main line track had not been repaired for two years. This witness, on cross-examination, was asked if a new board had been placed on the main line track and the witness answered in the negative. It is clear that the evidence of repair was not offered for the purpose of establishing the fact that a defect existed in the walk but merely for the purpose of showing where the defect was located. This evidence was competent in view of the evidence offered by defendant.

■ Error was also assigned to the giving of instructions for the plaintiff because the instructions authorized the jury to find for plaintiff for a fracture of the vertebra although that was not pleaded. What we have heretofore said with reference to the admissibility of evidence on this point disposes of this question. Plaintiff introduced evidence of a broken vertebra and defendants introduced evidence to the contrary. Even if the petition did not specifically mention a fracture the defendants were not misled thereby. The defendants introduced evidence upon that issue and did not contend that other evidence not offered was available. The petition stated that plaintiff's back and spine were permanently injured and lacerated. The purposes of pleadings are well stated in 49 Corpus Juris, 30, section 1, as follows:

"Pleadings are statements, in logical and legal form of the facts which constitute plaintiff's cause of action or defendant's ground of defense. They are the allegations of the parties of what is affirmed on the one side and denied on the other, disclosing to the court or jury, who have to try the cause, the real matter in dispute. Their purpose is to define the issues and form the foundation of the proof to be submitted on the trial, by advising the adverse party what is relied on as a cause of action or a defense, so that he may be prepared on the trial to meet the issues raised."

Defendants were well prepared and met the issue and, therefore, are in no position to complain.

■ Appellants also assert that the verdict was grossly excessive. There was evidence of a prior injury to plaintiff's back and spine.

Plaintiff, however, was an able-bodied man prior to the time he received the injuries now complained of. He was sixty-five years of age and was an electrician, a practical nurse and capable of performing hard manual labor. His average earnings amounted to about $20 to $30 per week. Plaintiff described his condition, since the injury, in part as follows:

"Q. Wish you would describe your feelings, if hurt any particular place tell where. A. Hurt me right across the kidneys, . . . and has hurt me all the time since, just continuous dead pain there, like if set down too long it will hurt, if stand up too long it will hurt and if lay down got to get up probably and sit down on the side of the bed. . . . I examined my urine, colored blood passed from me for several days. While I was in bed I felt pretty rough, I tell you, back felt like unjointed there. . . . Have not done a day's work since then. The only thing I did since, I put in a floor socket for Mrs. Williams. It took about an hour or more. I can't sleep much of nights, get restless, back hurts if lay on it, got to get up and walk around a little bit or sit down in a chair. It has been that way all the time. Can't lift anything as my back feels like it will pull in two if I do. I can walk very little without a crutch, it tires me and hurts my back. I can walk a little without it. I never had any trouble with my back. When I nursed Mr. Turner, when I first went to work he could help himself a little bit; he was a very large man; as he got feebler, I would have to lift him up and down in a chair and give him his bath, and take care of him continuously. He weighed about 200. I never had any crookedness in my back or humped place in my back before. My leg that healed crooked is crooked at the knee. I did not have any physical defect except that."

From a reading of the record in this case we are of the opinion the evidence justified a finding that in this case respondent's injuries were at least as serious as the injuries sustained by the plaintiff in the case of Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, l. c. 659 (18) and the plaintiff in Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. (2d) 1071. In each of these cases a judgment for $10,000 was authorized by this court.

It is the province of the jury to assess plaintiff's damages in personal injury cases. Courts only interfere when the verdict is either grossly excessive or grossly inadequate. We cannot say that the verdict in this case was grossly excessive and are, therefore, not authorized to disturb the verdict of the jury. Other assignments made have been examined and found to be without merit.

The judgment is affirmed. *Cooley* and *Fitzsimmons CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.