**Helen HICKEY, Respondent,**

**v.**

**The KANSAS CITY SOUTHERN RAIL-
WAY COMPANY, a Corporation,
Appellant.**

No. 44812.

Supreme Court of Missouri.

Division No. 1.

April 9, 1956.

Rehearing Denied May 14, 1956.

ness says the crown is four times higher than the crown of modern paving and that it was constructed in that manner "to wash the manure off into the gutters". The result is that a motorist is required to maintain a constant leftward pressure on the steering wheel of his vehicle to keep it from veering to the right, toward and into the gutter. Defendant's track (a spur), laid in 1919, crosses over Wheeler Avenue in a slightly curving but, for all practical purposes of this opinion, at a right angle. The track was so constructed that the rails rested on top of the curbs. Photographs placed in evidence by plaintiff and testimony of defendant's witnesses show that in constructing the crossing defendant, by the use of asphalt, raised the level of the paving over the crossing to the top of the rails so as to facilitate the approach to and passage over its track, but it did not fill in the gutter, which left the rails, as they extended from the edges of the concrete paving to and over the curbs, exposed and (judging from the photographs) about 12 inches above the bottom of the gutter. The photographs also show that the asphalt had been beveled or slanted downward from a short distance within the outer edges of the paving to the bottom of the gutter. According to defendant's evidence, Wheeler Avenue is one of the widest north-south traffic arteries in the city and, in the summer of 1953, carried an average of 300 cars per hour during the peak hours of 6:45 a. m. to 9:00 a. m. There were three other streets that carried a comparable volume of traffic.

The petition alleged that defendant "negligently failed to keep the roadway of Wheeler Avenue in a reasonably safe condition" for motorists driving thereon "so that they would not become injured by any defects". The answer denied that allegation and pleaded negligence of plaintiff.

In his opening statement, defendant's counsel stated that he thought the testimony would show that when the track was constructed "they laid it flush with the top of the pavement so it was all even and smooth and level with that some 36 feet of pavement, the evidence will show, but when you get to the gutter—I think the gutter

Jos. R. Brown, C. H. Rimann, Kansas City, Bond, Bond & Buehner, Joplin, for appellant.

Henry Warten, Emerson Foulke, Joplin, Lyman Mikel, Fort Smith, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff recovered judgment in the sum of $13,000 for personal injuries sustained when an automobile driven southward by her on Wheeler Avenue in the City of Fort Smith, Arkansas, was wrecked as it passed over an allegedly rough and defective crossing maintained by defendant over its railroad track intersecting Wheeler Avenue. Defendant has appealed on grounds of error in the admission of evidence as to repairs made by defendant at the crossing subsequent to plaintiff's injuries, in the giving of plaintiff's Instruction PP–1, and in the refusal of defendant's Instruction D–1.

Wheeler Avenue extends north and south. It is 40 feet 6 inches, wide within its curbings. It was paved in the "horse and buggy days", in 1912, with a slab of concrete 36 feet, 2 inches, in width, leaving a gutter on each side of the paving 2 feet, 2 inches, in width between the edge of the pavement and the curb. The paving had a crown of 12 inches at its center. Defendant's wit-

is some 2 feet, 2 inches wide; when you get to the gutter, you drop off of the great big mound which represents Wheeler Avenue, the rail is exposed. It has to go across the gutter—you can't fill up the gutter, because that is the way the rain drains off into the storm sewers when it rains."

At the beginning of the trial, plaintiff's witness, Arthur Hillhouse, a taxicab driver who had known the crossing for many years and who had witnessed the accident, identified and the court admitted in evidence five photographs of the crossing as it existed when plaintiff was injured on June 1, 1953, and had so existed for many years. Plaintiff then produced three photographs of the crossing showing that subsequent to June 1, 1953, the gutter had been filled with asphalt from the paving to the outer edge of the curb between the track rails and for a considerable distance on either side thereof, so that the street was paved and brought to the level of the top of the tracks from curb to curb within that area. At the request of defendant, counsel were heard by the court as to the admissibility of the latter three photographs outside the hearing of the jury. After the witness identified them as true pictures of the crossing following the changes above described, plaintiff offered them in evidence on the ground that the above quoted extract from the opening statement of counsel for defendant had made them competent. Counsel for defendant objected on the ground they showed Wheeler Avenue had been altered and, as altered, defendant had made certain improvements to the crossing; that the only purpose of the proffered evidence was to prove defendant's negligence by subsequent alterations, which made the evidence inadmissible; and further stated: "We have admitted responsibility in regard to the tracks in the pleadings. * * * We admit it is our duty to maintain the crossing." The court considered the opening statement of counsel for defendant, the objections made to the introduction of the photographs, examined one of them, announced that it appeared from it that the gutter was narrowed "by filling it up * * * sort of even with this pavement", and held it

competent evidence by virtue of the opening statement of defendant's counsel as above quoted. Hillhouse then testified that the changes in the crossing, as reflected in the photographs, were that the old gutter "has been filled in there" and a new gutter "cut around". Counsel for defendant renewed their objection on the grounds theretofore stated. Upon inquiry from the court, defendant's counsel stated defendant would "like an instruction limiting the purpose for which they were admitted". The court stated it would be given "when the instructions are presented". The pictures were then exhibited to the jury.

Plaintiff's testimony was: She and her husband were and had been for about three months employed at different business establishments in Fort Smith on the date she was injured, to wit: June 1, 1953. On that day, which was clear and dry, at about the hour of 7:00 a. m., in accordance with custom, she, with her husband and their three children, rode in their jeep station wagon to her husband's place of employment in the 500 block of Wheeler Avenue. She then drove the car southward on Wheeler, with the three children, then aged 11, 6 and past 2 years, riding in the back seat, for the purpose of leaving them at her husband's mother's home for the day, and driving thence to her own place of employment at a furniture factory. As she drove southward on Wheeler and approached the crossing in question, she was driving midway of the west half of the concrete paving at a speed of 20 to 25 miles per hour. When she was about 20 feet north of the crossing, she heard her youngest child scream, looked over her right shoulder, saw that the child had fallen to the floor of the car but was not injured, and returned her attention to the highway. The direction of her car had changed from the south to the southwest. Almost immediately her car "hit the railroad track"; "hit a hole there and then it just throwed me over". The hole which her car first hit was not at the "naked" rails, but was in a hole between the tracks. (She indicated a point on one of the photographs somewhat to the left of the exposed rails.) When she

hit the hole, her car turned to the right and then "flipped" over the tracks onto its left side. The whole episode occurred within about a second. The car bounced across the track and was turned over on its left side. Plaintiff was severely injured and shocked, the children were screaming and plaintiff was worrying about them and trying to get the youngest child out of the car.

Hillhouse, with passengers in his taxicab, was driving northward on Wheeler Avenue and came to the crossing at almost the same moment plaintiff came. He testified: His rear wheel had crossed when her front wheel hit the track. He "did not actually see the front wheel hit", but he "heard the impact". There "is a little slant there". He did see the right rear wheel hit the track and indicated the point on the photograph where the tracks are exposed. The right front wheel of the car then hit the embankment beyond the track and the car turned over on its left side.

■ Prior to discussion of the errors alleged by defendant, we should briefly state the law of Arkansas defining the duty of a railroad to maintain a crossing such as is involved in this case. In that state, as elsewhere, a railroad company is not an insurer of the safety of persons traveling over its tracks where they cross a public highway. The law does require it to construct and maintain its crossings over public highways in such a manner as shall make them reasonably safe for travelers insofar as safe operation of the railroad will permit. This duty is a continuing one and is commensurate with the increasing necessity of the public and, where the growth of a city or increased travel over its streets has rendered the crossing as originally constructed or restored inconvenient or dangerous, it is the duty of the railroad to adapt it to the needs of the public. St. Louis, I. M. & S. Ry. Co. v. Smith, 118 Ark. 72, 175 S.W. 415, 416; Payne v. Stockton, 147 Ark. 598, 229 S.W. 44, 46; Missouri Pacific R. Co. v. Wright, 197 Ark. 933, 126 S.W.2d 609, 612. The railroad must anticipate the reasonable demands of the public and, where

the traffic requires it, the crossing must be made available for the entire width of the road or street. Chicago, R. I. & P. Ry. Co. v. Redding, 124 Ark. 368, 374–375, 187 S.W. 651, 652–653; 74 C.J.S., Railroads, § 142, pp. 586–587.

■ Did the court err in admitting into evidence the testimony of Hillhouse and the photographs showing the changes made in Wheeler Avenue subsequent to the date of plaintiff's injuries? There is little, if any, dispute as to the applicable law. Evidence of changes, repairs or precautionary measures taken after an accident ordinarily is not admissible to show antecedent negligence or as an admission of such negligence, but such evidence may be shown for various reasons. 65 C.J.S., Negligence, § 225, p. 1042 et seq.; Derrington v. Southern Ry. Co., 328 Mo. 283, 40 S.W.2d 1069, 1072; Brule v. Mayflower Apartments Co., Mo. App., 113 S.W.2d 1058, 1060. It is admissible "to rebut evidence or *contentions * * * that the use or condition then existing could not have been improved or made safer, or that such condition was a necessary one.*" (Emphasis ours.) 65 C. J.S., Negligence, § 225(f), pp. 1044–1045. See Wagner v. Gilsonite Const. Co., Mo. Sup., 220 S.W. 890, 898; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608, 613; Phillips v. Hamilton Brown Shoe Co., 178 Mo.App. 196, 165 S.W. 1183, 1188; Bujalo v. St. Louis Basket & Box Co., Mo.App., 227 S.W. 844, 846; Crockett v. City of Mexico, 336 Mo. 145, 77 S.W.2d 464, 468 [9].

■ Under the issues presented by the pleadings and the evidence in this case, it would have been competent for defendant to show that the gutter could not be filled, "because (as stated by defendant's counsel in his opening statement) that is the way the rain drains off into the storm sewers". By such statement counsel for defendant clearly intended for the jury to believe that such was the fact and that it would produce evidence to that effect. Such statement, if believed by the jury, would, of course, be highly prejudicial to plaintiff. This, for the reason that even though the jury should

believe from the evidence that the demands of modern traffic were such that the crossing was not reasonably safe, yet it might further find that defendant should not be held responsible for injuries sustained by a traveler attempting to go over it because it could do nothing to remedy the situation. In view of the statement made by defendant's counsel, plaintiff should be permitted to show by any competent evidence available that the railroad could have reconstructed the crossing so as to eliminate any hazard existing by virtue of its original construction, and we think of no better way to show that fact than proof that it actually was so reconstructed.

■ Defendant tendered no instruction limiting the purpose for which the photographs could be considered by the jury and makes no point on the failure of the trial court so to instruct, even though it had priorly stated it would. Defendant insists, however, that the photographs "depict a change in the curbline of the west side of Wheeler Avenue at the west end of defendant's tracks where they crossed Wheeler Avenue and show that the curbline and curb of Wheeler Avenue had been reconstructed in that it had been extended and moved back and that, as thus extended and moved back, additional paving material had been filled into a portion of the area which formerly comprised the gutter." "In other words", says defendant, "these exhibits depict a change in the curb of Wheeler Avenue and show that Wheeler Avenue had been altered and that as altered the defendant railroad had made certain improvements to the crossing in that it had placed additional paving material in the area that had constituted the old gutter area but which was no longer the gutter area by virtue of the widening of Wheeler Avenue and the rebuilding of curbs as widened." A searching study of the photographs fails to reveal any radical change in or widening of the street other than that asphalt had been poured into the gutter on either side of and between the rails to the level of the top of the rails, which, of course, brought the grade of the street above the old curb level, which, in turn, would cause surface

water to drain over the curb, and, to that extent, the street was widened by the width of the curbs. Apparently, the trial court also saw no more in the photograph examined by it than that the gutter was eliminated "by filling it up * * * sort-of even with this pavement". But, we accept defendant's interpretation of Hillhouse's testimony and the photographs as an accurate statement of the facts, yet we do not think it alters the situation. At the trial, defendant's counsel forthrightly admitted defendant's duty to maintain the crossing, and it is significant that it introduced no evidence that the gutters could not be filled in "because that is the way the rain drains off into the storm sewers". Neither did it introduce any evidence that any of the changes made, as reflected by Hillhouse's testimony and the photographs, were made by any person or agency other than defendant or at its instigation and direction, or that such changes were not made solely in compliance with its admitted duty to maintain the crossing in a reasonably safe condition; and this despite the fact defendant placed upon the witness stand certain city officials and its own engineer who surely would have known if the changes were made at the direction of any agency other than defendant. In the absence of evidence to the contrary, we must assume that they were made by defendant in compliance with its admitted duty.

The trial court did not err in admitting the testimony of Hillhouse relating to and the photographs showing the changes made in the crossing subsequent to the accident.

Plaintiff's Instruction PP–1 declares the law of Arkansas as to defendant's duty to maintain the crossing, as to which no complaint is made, and then hypothesizes: "* * * if you find and believe from the evidence * * * that as her automobile traveled across said railroad crossing it turned over and the plaintiff was injured, then, if you further find and believe from the evidence that said crossing was not in a reasonably safe condition for persons driving motor vehicles across it, or if you find that the defendant left a large hole between its rails and the street level at

said point which was not reasonably safe for persons driving motor vehicles across said crossing then, if you further find that the defendant failed to exercise ordinary care to repair, maintain or reconstruct said crossing so as to make it reasonably safe for the traveling public in a manner commensurate with public needs, and if you further find that the defendant knew or could, by the exercise of ordinary care, have known of such condition as you may find to have existed at said time and place, long enough prior to June 1, 1953, to have repaired or reconstructed said crossing and put in a reasonably safe condition, and failed so to do, then you are instructed that the defendant is guilty of negligence, * * *", etc.

Defendant says this instruction is bad "in that it wholly failed to hypothesize for the consideration of the jury the character of the roadway constituting Wheeler Avenue at and near the scene of the crossing. Particularly did it fail to hypothesize a physical fact deemed material by the defendant, namely, the crown of the road, the existence of which was testified to by several witnesses as being an unusual feature."

■ The evidence as to the manner in which the crossing was originally constructed and continued to exist at the time plaintiff was injured was never in dispute; it was reflected by the photographs, admitted by plaintiff and fully testified to by defendant's witness, Harry Peck, who acted as an assistant city engineer when the street was paved. "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions." Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496, 500–501. Defendant requested numerous and the court gave a series of instructions that fully submitted its defense. In none of them, given or refused, do we find any direct or indirect mention of the "crown of the road". The assignment is overruled.

■ Finally, defendant complains of the refusal of the trial court to give its instruction D–1, as follows: "* * * if you find from the credible evidence that the exact spot and location at which plaintiff operated her automobile over defendant's tracks, at the time and place mentioned in evidence, was free of any defect, * * * and * * * that the passage of the automobile over defendant's track did not in any way contribute to the turning over of the automobile * * * then your verdict must be against the plaintiff * * *." The trouble with this instruction is there is no evidence to support it. Defendant says that there was a serious controversy in regard to the exact manner in which the automobile crossed the tracks and the manner in which it was upset. We have found no evidence to support defendant's assertion. The testimony of plaintiff, corroborated by the testimony of Hillhouse, is to the contrary and is undisputed. Of course, plaintiff bore the risk of non-persuasion, but that does not entitle defendant to submit a finding of fact, of which there was no evidence. The assignment is overruled.

The judgment is affirmed.

All concur.